# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| BRENT CONFORTI, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | |
| v. | **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND WASTE OF CORPORATE ASSETS** |
| JEFFREY C. OWEN, MICHAEL M. CALBERT, WARREN BRYANT, ANA CHADWICK, PATRICIA FILI-KRUSHEL, TIMOTHY MCGUIRE, WILLIAM C. RHODES III, DEBRA A. SANDLER, RALPH SANTANA, TODD VASOS and CARMAN WENKOFF, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| DOLLAR GENERAL CORPORATION, a Tennessee Corporation, | |
| Nominal Defendant. | |

Plaintiff Brent Conforti, derivatively on behalf of Dollar General Corporation ("Dollar General" or the "Company"), brings the following Verified Stockholder Derivative Complaint against members of the Board of Directors of Dollar General (the "Board) for breaches of fiduciary duties owed to the Company and its shareholders. Except for allegations specifically pertaining to Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: documents produced to Plaintiff subject to a Confidentiality Agreement pursuant to Tennessee Business Corporations Act § 48-26-102 ("Section 48-26-102"), the Company's public filings in the United States Securities and Exchange Commission (the

"SEC"), public court filings, media and financial analyst reports, the Occupational Safety and Health Administration ("OSHA") website, and other public sources.

## I.     NATURE OF THE ACTION

1.     This case arises from a sustained failure of Dollar General's Board Members to implement and maintain an effective system of internal controls in violation of their fiduciary duties. The members of Dollar General's Board (the "Director Defendants") have permitted and condoned hazardous working conditions for its employees all while remaining deaf and blind to repeat OSHA violations and concerns.

2.     For the past eight years, Dollar General has shown a pattern of alarmingly willful disregard for federal safety standards, choosing to place profits over their employees' safety and wellbeing. Since 2017, Dollar General and its subsidiary, Dolgencorp LLC, have paid more than $12.3 million in initial OSHA penalties for numerous willful, repeat, and serious workplace safety violations. Over the past five years, OSHA found unsafe conditions that exposed workers to the possibility of being struck by falling boxes of merchandise or trapped or unable to exit the store safely in an emergency in more than 180 inspections at Dollar General stores nationwide.[1]

3.     Dollar General's troubles with workplace safety were thrust into public spotlight in 2021 when *CNN* published an explosive article detailing a systematic and widespread pattern of the Company's long history of OSHA violations and repeated failures to protect its workers from on-the-job hazards. Within the article, the Assistant Secretary for OSHA states, "Dollar General has had a long history of disregarding safety measures to prevent serious injury or death in the event of a fire or other emergency…This company's troubled history of workplace safety

---

[1] U.S. Dept. of Labor, *OSHA News Release – Region 4,* Occupational Safety and Health Administration (Nov. 1, 2022), https://www.osha.gov/news/newsreleases/region4/11012022.

violations must come to an end."[2]

4.      In addition to being one of OSHA's top violators since at least 2016, former executives, store employees, law enforcement officials, and retail security experts told CNN Business that in 2020, Dollar General was failing to protect workers from violent crime. Dollar General's thinly staffed stores and low-cost approach has left workers vulnerable to robberies and other safety hazards. At least six Dollar General employees have died during armed robberies from 2016 to 2020 and several other employees have been seriously injured.[3]

5.      Dollar General places its profits before employee peril. To date, Dollar General remains one of the fastest growing discount stores in the nation. The Company's profits have increased five-fold since 2010 and during that same period, its stock has increased 800%.[4] As of January 10, 2022, the Company's market cap is $53.87 billion, and the Company remains a Fortune 500 Company.[5]

6.      The Director Defendants (as defined herein) repeatedly turned a blind eye to the Company's long-standing culture of hazardous working conditions and violent crime. Even when armed with knowledge of repeat OSHA violations and rising crime rates, Director Defendants applied window dressing to remedy gaping holes in the Company.[6] The Director Defendants failed to: (i) investigate exorbitant and repeat OSHA violations; (ii) act to address OSHA noncompliance and high crime rates; or (iii) act to improve its policies and procedures to ensure employee

---

[2] Nathaniel Meyersohn, *Dollar General is putting workers' safety at risk, Labor Department says,* CNN, https://www.cnn.com/2021/12/15/business/dollar-general-osha-worker-safety/index.html (last visited Nov. 15, 2022).

[3] *Id.*

[4] *Id.*

[5] Dollar General, https://companiesmarketcap.com/dollar-general/marketcap/ (last visited Jan. 10, 2022).

[6] *See, e.g.,* DG_B&R_00000133, ████████████████████

complaints are heard. Furthermore, the Director Defendants failed to implement adequate internal controls and reporting programs to address employee concerns of unsafe working conditions. Instead of dealing with the pervasive safety issues, the Director Defendants chose to merely █████████████████[7] until the issues magically resolved themselves. Neither the Company's executives nor its Board met its fiduciary duties to address workplace safety and violent crime at Dollar General, investigate when red flags appeared, and implement efficient protocols that would have ensured greater visibility into workplace hazards and violent crime at the Company. Their breaches helped ensure these hazardous conditions remained omnipresent in Dollar General stores nationwide.

7. As a result of their membership on one of more of the Board's Committees, the Director Defendants were subject to additional responsibilities, which they also abdicated. For instance, one of the Audit Committee's primary purposes is to "Assist Board oversight of . . . (2) the Company's compliance with legal and regulatory requirements."[8] With respect to ethical and legal compliance, the Audit Committee must, "[e]stablish procedures for (a) the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and (b) the confidential, anonymous submission by Company employees of concerns regarding questionable accounting or auditing matters . . . Discuss with the Company's General Counsel legal matters that may have a material impact on the financial statements or the Company's compliance policies.[9] Likewise, Dollar General's Corporate

---

[7] *See* DG_B&R_00000573, ████████████████████████ discussing awareness of █████████

[8] *See Dollar General Corporation Audit Committee Charter*, https://investor.dollargeneral.com/ download/companies/dollargeneral/Committee%20Charters/Charter--Audit%20Committee%20 (08-25-21%20Final).pdf (last accessed Nov. 15, 2022).

[9] *Id.*

Governance Guidelines expressly state, "each director is responsible for complying with all Company policies and procedures applicable to members of the Board, including without limitation the Code of Business Conduct and Ethics . . ."[10]

8.      Despite its inaction and piling OSHA penalties, the Board is not shy about boasting safety as one of its top priorities. According to Dollar General's "Code of Business Conduct and Ethics," safety is very important. Dollar General "ensure[s] a safe workplace by following all-safety related signs and instructions and by taking steps to prevent accidents."[11]

9.      Through this derivative action, Plaintiff seeks to hold the Director Defendants accountable for permitting an unsafe work environment detailed here, for failing to properly oversee a system designed to rectify unsafe working conditions despite the Company's long history of safety violations and violent crime.

## II.      JURISDICTION AND VENUE

10.      This court has jurisdiction over each Defendant named herein because each Defendant either a corporation that conducts business in and maintains operations in Tennessee or is an individual who has sufficient minimum contacts with Tennessee to render the exercise of jurisdiction by the Tennessee courts permissible under traditional notions of fair play and substantial justice.

11.      Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because (i) Dollar General maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion

---

[10] *See Dollar General Corporate Governance Guidelines,* https://investor.dollargeneral.com/download/companies/dollargeneral/CorporateGovernance/Governance%20Principles-08.23.22.pdf (last accessed Nov. 15, 2022).
[11] Dollar General, *Serving Others: Dollar General's Code of Business Conduct and Ethics*, https://investor.dollargeneral.com/dollargeneral/pdf/DG_Code_of_Ethics_4-2015.pdf (last accessed Jan. 12, 2023).

5

of the transactions and wrongs complained of herein, including Defendants' unlawful conduct and violation of fiduciary duties owed to Dollar General occurred in this District; and (iv) some Director Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

### III. PARTIES

#### A. Plaintiff

12.     Plaintiff is and was, at all times relevant hereto, a holder of Dollar General common stock. Plaintiff is committed to retaining Dollar General shares throughout the pendency of this action to preserve his standing. Plaintiff will adequately and fairly represent the interests of Dollar General. On June 10, 2022, Plaintiff, by his attorneys, made a written demand to Dollar General pursuant to Tenn. Code Ann. § 48-26-102 to compel inspection of books and records (the "Books and Records Complaint"). In response, ████████████████████████████████████████ ████████████████████████████████████[12]

#### B. Nominal Defendant

13.     Nominal Defendant Dollar General is a Tennessee corporation with its principal executive offices located at 100 Mission Ridge, Goodlettsville, Tennessee 37072. The Company's stock is traded on the New York Stock Exchange under the ticker symbol "DG." As of August 19, 2022, Dollar General had more than 225,571,729 shares outstanding.[13] Dollar General is one of the largest discount retailers in the nation and offers a broad selection of low-priced merchandise.

---

[12] ████████████████████████████████████████████████████████ ████████████

[13] Dollar General Corp., Quarterly Report (Form 10-Q) (July 29, 2022), https://www.sec.gov/ix? doc=/Archives/edgar/data/29534/000155837022013950/dg-20220729x10q.htm.

6

## C. Director Defendants

14. Todd Vasos ("Vasos") has served as Senior Advisor since November 2022 and as a member of our Board since June 2015. He joined Dollar General in December 2008 as Executive Vice President, Division President and Chief Merchandising Officer and was promoted to Chief Operating Officer in November 2013 and to Chief Executive Officer in June 2015. Defendant Vasos knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. Defendant Vasos is the largest, and controlling, shareholder of Dollar General. As of April 1, 2022, Defendant Vasos owns 424,771 shares of Dollar General stock and his annual compensation for 2021 was $16,618, 873.[14]

15. Jeffery C. Owen ("Owen") has served as Chief Executive Officer and as a member of Dollar General's Board since November 2022. He previously served as Chief Operating Officer at Dollar General from August 2019 to November 2022. He returned to Dollar General in June 2015 as Executive Vice President of Store Operations.[15] Defendant Owen knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant Owen owns 226,402 shares of Dollar General stock and his annual compensation for 2021 was $4,975,694.[16]

---

[14] *See* Dollar General Corp., Proxy Statement (Schedule 14A), https://www.sec.gov/Archives/edgar/data/29534/000110465922041763/tm2135878-1_def14a.htm (last accessed Jan. 11, 2023).
[15] Dollar General, https://investor.dollargeneral.com/websites/dollargeneral/English/5100/board-of-directors.html (last visited Jan. 4, 2023).
[16] *See*, *supra* note 14.

7

16. Carman Wenkoff ("Wenkoff") served as Executive Vice President and Chief Information Officer since July 2017. Defendant Wenkoff knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant Wenkoff owns 97,139 shares of Dollar General stock and his annual compensation for 2021 was $3,281,360.

17. Michael M. Calbert ("Calbert") has served as Director and Chairman of the Board since January 2016. Defendant Calbert has been chosen to lead the executive sessions of Dollar General's directors and its non-management directors as well as Chair of the Nominating, Governance & Corporate Responsibility Committee.[17] Defendant Calbert knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant Calbert owns 110,582 shares of Dollar General stock.[18]

18. Warren Bryant ("Bryant") has been a Director of the Board since 2009 and is a member of both the Compensation Committee and the Audit Committee.[19] Defendant Bryant knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations.

---

[17] *See, supra* note 15.
[18] *See, supra* note 14.
[19] *See, supra* note 15.

8

19.     Debra A. Sandler ("Sandler") has served as a Director since 2020[20] and is a member of the Nominating, Governance & Corporate Responsibility Committee and the Audit Committee.[21] Defendant Sandler knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations.

20.     William C. Rhodes III ("Rhodes") has served as a Director of the Board since 2009,[22] and serves as Chair of the Audit Committee.[23] Defendant Rhodes knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations.

21.     Ralph Santana ("Santana") has served as a Director of the Board since 2018[24] and serves as a member of the Nominating Governance & Corporate Responsibility Committee.[25] Defendant Santana knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all

---

[20] *Dollar General Corporation Appoints Debra A. Sandler to Board of Directors; Increases Board Size from Eight to Nine Directors* (March 17, 2020), https://newscenter.dollargeneral.com/news/ dollar-general-corporation-appoints-debra-a-sandler-to-board-of-directors-increases-board-size-from-eight-to-nine-directors.htm (last visited Jan. 4, 2023).
[21] *See, supra* note 15.
[22] Dollar General, https://www.comparably.com/companies/dollar-general/william-c-rhodes-iii (last accessed Jan. 12, 2023).
[23] *See, supra* note 15.
[24] *Dollar General Appoints Two New Members to its Board of Directors,* https://www.business wire.com/news/home/20180213005566/en/Dollar-General-Appoints-Two-New-Members-to-its-Board-of-Directors (last visited Jan. 4, 2023).
[25] *See, supra* note 15.

9

applicable federal and state laws and regulations.

22. Ana Chadwick ("Chadwick") has served as a Director of the Board since 2022[26] and serves as a member of the Audit Committee.[27] Defendant Chadwick knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations.

23. Timothy McGuire ("McGuire") has served as a Director of the Board since 2018[28] and is a member of the Compensation Committee.[29] Defendant McGuire knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant McGuire owns 6,819 shares of Dollar General stock.[30]

24. Patricia Fili-Krushel ("Fili-Krushel") has served as a Director of the Board since 2021[31] and is Chair of the Compensation Committee and a member of the Nominating, Governance & Corporate Responsibility Committee.[32] Defendant Fili-Krushel knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and

---

[26] *Dollar General Corporation Expands Board of Directors* (Jul. 29, 2022) https://www.businesswire.com/news/home/20220729005043/en/Dollar-General-Corporation-Expands-Board-of-Directors.
[27] *See, supra* note 15.
[28] *See, supra* note 24.
[29] *See, supra* note 15.
[30] *See, supra* note 14.
[31] *See, supra* note 26.
[32] *See, supra* note 15.

10

regulations. As of April 1, 2022, Defendant Fili-Krushel owns 27, 352 shares of Dollar General stock.[33]

## IV. FACTUAL ALLEGATIONS

### A. Dollar General is one of OSHA's Top Violators

25.    Dollar General is a Tennessee corporation with its headquarters in Goodlettsville, Tennessee. Dollar General was founded in 1939 is one of the largest discount retailers in the nation with more than 18,000 stores in 47 states as of February 25, 2022. The Company offers a broad selection of merchandise, including consumable items, seasonal items, home products, and apparel. Dollar General stores are widely known by shoppers for their low-prices merchandise. At the U.S. Department of Labor, the Company is recognized for its long history of violations and repeated failures to protect its workers from on-the-job hazards.

26.    Over the past six years, Dollar General has subjected more than 150,000 employees to increased safety risks and has become one of the Occupational Safety and Health Administration's ("OSHA's") top violators. Since 2016, OSHA has proposed more than $3.3 million in safety violations in 54 inspections at Dollar General locations nationwide. As of *November 28, 2022, Dollar General has been subject to more than $9.6 million in OSHA penalties since 2017*.[34] The Company repeatedly faces scrutiny from OSHA, the Department of Labor, and news networks such as CNN and NBC, which expose the safety issues to the public in scandalous publications. Typically, these violations consist of fire hazards such as blocked

---

[33] *See, supra* note 14.
[34] U.S. Dept. of Labor, *UPDATED: INSPECTIONS FIND DOLLAR GENERAL CONTINUES TO DISCOUNT SAFETY AS VIOLATIONS, PENALTIES PILE UP FOR BLOCKED EXITS, UNSAFE STORAGE AREAS* (updated Nov. 28, 2022), https://www.dol.gov/newsroom/releases/osha/osha20221017.

electrical panels, obstructed exits, cluttered aisles, dimly lit stores, and rodent infestations.[35] In

fact, ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ [36]

27.     Worse, many Dollar General stores fail to remedy the safety violations even after

OSHA penalizes their non-compliance. For instance, in June of 2021, a federal inspection at a

Dollar General in Mobile, Alabama found the store "again failed to keep the main storeroom

orderly" to allow workers to exit safely during an emergency. This Alabama store has also exposed

workers to slip and trip hazards, falling boxes, prevented access to electrical panels and ultimately,

OSHA proposed $321,827 in fines for these violations.[37]

28.     Blocked exits and electrical boxes are also common OSHA violations. In August

2021, OSHA inspectors identified five *willful* violations at Dollar General stores in Georgia and

Alabama for failing to keep receiving areas clean and orderly and stacking materials in an unsafe

manner for their employees. As a result of these operations, OSHA proposed $638,680 in penalties

for the Alabama stores and $364,629 in penalties for the store in Dalton, Georgia for similar

conduct.[38] Similarly, Dollar General stores in Boone and Harrison counties, West Virginia were

---

[35] Nathaniel Meyersohn, *Dollar General is putting workers' safety at risk, Labor Department says,* CNN (Dec. 15, 2021, 12:57 p.m.-EST), https://www.cnn.com/2021/12/15/business/dollar-general-osha-worker-safety/index.html; *see also* Dan Flynn, *Federal subpoena follows inspections after warning and recall at 'dollar stores.'* (Mar. 17, 2022), https://www.foodsafetynews.com/2022/03/federal-subpoena-follows-inspections-after-warning-and-recall-at-dollar-stores/; *see also* Monica Nakashima, *Bessemer Dollar General distribution center temporarily closed due to possible rat infestation* (Aug. 8, 2022), https://www.cbs42.com/news/local/bessemer-dollar-general-distribution-center-temporarily-closed-due-to-possible-rat-infestation/.
[36] *See* DG_B&R_00001464 at '469; and DG_B&R_00001175.
[37] U.S. Dept. of Labor, *OSHA News Release – Region 4,* Occupational Safety and Health Administration (Dec. 13, 2021), https://www.osha.gov/news/newsreleases/region4/12132021.
[38] U.S. Dept. of Labor, *OSHA National News Release,* Occupational Safety and Health Administration (Feb. 24, 2022), https://www.osha.gov/news/newsreleases/national/02242022.

12

fined $169,000 for blocking store aisles and electrical boxes, obstructing emergency exit doors, and prohibiting access to escape routes in the event of an emergency and making it unsafe for employees to control lights, coolers and air conditioners.[39]

29.     Other Dollar General stores across the nation have received hefty fines as well: Sherman, Texas (fined $162,800 for obstructed exits); Hamburg, Pennsylvania (fined $113,300 for bolted and blocked exits, low light conditions for exits, unmarked exits, and blocked aisles); O'Fallon, Montana (fined $163,000 for obstructed emergency exits and exposing workers to fall hazards); Wichita, Kansas (fined $105,600 for blocked exit routes and materials stored near electrical panels, and fall and trip hazards) and several other stores have been similarly fined.[40]

30.     Unfortunately for the hard-working employees, Dollar General also has a history of rodent infestations and unsanitary conditions within its stores. On March 20, 2017, a Dollar General store in North Bend, Ohio was shut down due to live insects, rodents and other pests, a large amount of mice feces and nesting material in the facility, and build-up of dirt and debris. Dollar General stores were also shut down by the Health Department due to a rodent infestation in Indiana (2018) and in Pennsylvania for active pest infestation and keeping food in unsanitary conditions (2021).[41]

---

[39] U.S. Dept. of Labor, *OSHA Regional News Brief – Region 3,* Occupational Safety and Health Administration (Sept. 28, 2015), https://www.osha.gov/news/newsreleases/region3/09282015.

[40] U.S. Dept. of Labor, *OSHA Regional News Brief – Region 6,* Occupational Safety and Health Administration (Jan. 4, 2016), https://www.osha.gov/news/newsreleases/region6/01042016; U.S. Dept. of Labor, *OSHA Regional News Brief – Region 3,* Occupational Safety and Health Administration (Oct. 29, 2015), https://www.osha.gov/news/newsreleases/region3/10292015; U.S. Dept. of Labor, *OSHA News Release-Region 7*, Occupational Safety and Health Administration (Feb. 1, 2016), https://www.osha.gov/news/newsreleases/region7/02012016; U.S. Dept. of Labor, *OSHA News Release – Region 7,* Occupational Safety and Health Administration (Aug. 2, 2016), https://www.osha.gov/news/newsreleases/region7/08022016-2.

[41] *Dollar General closes after inspectors find live rodents, insects found in store,* WLWT5 (Mar. 20, 2017), https://www.wlwt.com/article/dollar-general-closes-after-inspectors-report-live-rodents-insects-found-in-store/9156755; Katie Cox, *Marion Dollar General closed by health*

31.     Over the course of six years, Dollar General has been lambasted by OSHA directors for their alarming inattention to workplace safety and "OSHA will make every effort to hold them accountable for their failures."[42] According to OSHA area director Eugene Stewart, ***"(t)he company has failed to implement and verify that the necessary corrective actions have been taken to remove these hazards and protect their workers at these locations… Unfortunately, Dollar General has not made employee safety a priority, leaving its workers unnecessarily exposed to serious injury or death.***"[43]

32.     In sum, OSHA has conducted 182 inspections at Dollar General stores nationwide and has generated more than $9.6 million in fines. Once again, OSHA inspectors have "found Dollar General stores ignoring federal safety standards and exposing their employees to hazardous working conditions in violation of the law."[44] All while OSHA and employees voice their concerns with Dollar General and its Board, the Board turns a deaf ear to these grave concerns and continues to place profits before peril.

### B.     Dollar General Stores Are Crime Magnets

33.     Dollar General seeks to disappoint when it comes to high crime rates. Aside from the poor working conditions to which the Company exposes its employees, Dollar General stores are also crime hotspots. Several employees across Dollar General stores have been subject to

---

*department after live and dead mice found in storage room,* WRTV, https://www.wrtv.com/news/local-news/grant-county/marion-dollar-general-closed-by-health-department-after-live-and-dead-mice-found-in-storage-room (last updated Oct. 25, 2018, 3:39 p.m.); *Sharpsburg Dollar General Slapped with Another Consumer Alert Over Mouse Infestation*, CBS Pittsburgh (Sept. 9, 2021), https://www.cbsnews.com/pittsburgh/news/sharpsburg-dollar-general-another-consumer-alert-mouse-infestation/.

[42] *See, supra* note 36

[43] U.S. Dept. of Labor, *OSHA News Release – Region 4,* Occupational Safety and Health Administration (Apr. 14, 2016), https://www.osha.gov/news/newsreleases/region4/04142016.

[44] *See, supra* note 34.

and/or have lost their lives during armed robberies. At least six Dollar General employees have died during robberies since 2016, and other employees have been held at gunpoint numerous times. Employees have even resorted to bringing their own weapons into Dollar General stores for their own protection because, Dollar General "wouldn't do it."[45]

34. Dollar General, according to an expose published by CNN, has by far had the most robbery incidents compared to other local chains including Dollar Tree and Family Dollar.[46]

35. In 2019, a former Dollar General employee, Dave Dukes started bringing his gun to work because he felt he "needed it to protect himself. . . [since] Dollar General wouldn't do it [for him]." After witnessing three robberies at his Dollar General store in Dayton, Ohio, this employee shot and killed a man in self-defense.[47] Specifically in Dayton, Ohio, seven Dollar General stores accounted for 29% of commercial robberies that year. Some of the enabling factors contributing to these events, according to Daytona Police were blocked windows, high shelves, lack of maintenance outside the stores and lack of security guards at high incident locations.[48]

36. Some Dollar General employees take cash deposits to the bank by themselves. The Company's policy in its 2019 store operating procedures states that stores should make one or two deposits each day depending on their location and that the deposits can only be made by "key carriers," or high-ranking employees.[49]

37. Out of the seven Dollar General employees killed since 2016, two were shot as they

---

[45] Nathaniel Meyersohn, *Dollar General is cheap, popular and spreading across America. It's also a robbery magnet, police say,* CNN, https://www.cnn.com/2020/06/26/business/dollar-general-robberies/index.html (last updated Jun. 26, 2020, 12:24 p.m.-EDT) ("*CNN Dollar General Robbery Article*").
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*

left stores to deposit cash from the register at the bank.[50]

38.     Robberies at Dollar General occur at least on a weekly basis and are often covered in the news. Since CNN wrote an exposé on the safety conditions of Dollar General in June 2020, several other robberies have taken place at the Company at an alarming rate. For example, on October 16, 2020, a Dollar General Employee was found shot in the head after a customer told the police he had taken out the trash. Armed robberies also occurred on: November 30, 2021 in Birmingham, Alabama; December 21, 2021 in Little Falls, New York; January 14, 2022 in Detroit, Michigan; January 23, 2022 in Detroit, Michigan; February 21, 2022 in Kinston North Carolina; February 22, 2022 in Lima, Ohio; September 20, 2022 in Calhoun, Georgia, October 19, 2022 in Hampton, Virginia; November 20, 2022 in Baton Rouge, Louisiana, and on other dates.[51]

39.     Dollar General employees have also been placed in traumatic situations due to these events. On February 18, 2018, masked robbers tied up two Dollar General employees during a gunpoint robbery in Queens, New York. In the District Court of Dallas County Texas, former Dollar General manager Labresha King brought a negligence and wrongful termination suit against Dollar General after experiencing four robberies, being held at gunpoint numerous times, and

---

[50] *Id.*

[51] *Trotwood Dollar General employee shot in head, vehicle possibly involved found in Dayton,* WHIOTV (Oct. 16, 2020), https://www.whio.com/news/local/dollar-general-employee-shot-head-possible-vehicle-involved-found-dayton/STAIOEWPKRE6RHRIIEYKWQKNWE/; *Man arrested in Kinston Dollar General Robbery,* WITN (Feb. 23, 2022), https://www.witn.com/2022/02/23/kinston-dollar-general-robbed/; *Lima woman reportedly admits to dollar store robbery,* LIMAOHIO.COM (Feb. 24, 2022), https://www.limaohio.com/archive/2022/02/24/lima-woman-reportedly-admits-to-dollar-store-robbery/; *Calhoun Police Investigating Robbery at Dollar General*, THE GORDON GAZETTE (Sept. 20, 2022) https://www.wrganews.com/2022/09/20/calhoun-police-investigating-robbery-at-dollar-general/; Courtney Ingalls, *Police investigate armed robbery at Dollar General in Hampton,* WAVY.com (last updated Oct. 20, 2022, 6:15 p.m.-EDT), https://www.wavy.com/news/local-news/hampton/police-investigate-armed-robbery-at-dollar-general-in-hampton/; Sarah Lawrence, *Police searching for suspect in armed robbery of Dollar General*, WBRZ 2 (Nov. 23, 2022, 11:39 a.m.), https://www.wbrz.com/news/police-searching-for-suspect-in-armed-robbery-of-dollar-general/.

16

witnessing her coworker die in her arms during an armed robbery.[52]

40.     Moreover, Dollar General employees are constantly placed in harms' way and there is an extreme likelihood they will be exposed to armed robberies during their employment. Brian Flannery, a former divisional loss prevention director at Dollar General who oversaw security at thousands of Dollar General stores said, "Every night I was just waiting for there to be a phone call that said, 'Hey we've lost somebody,' . . . It wasn't a matter [of] if you were going to have a bad robbery. *It was a matter of when.*"[53]

### C.     Despite Numerous Complaints, the Board Remains Unresponsive

41.     Employees have persistently complained to Dollar General for assistance with staffing, store organization and overtime pay. Recently, in April, a Dollar General Manager named Mary Gundel was fired after she posted videos on the popular video platform, TikTok about staffing shortages and difficult hours.[54] In her videos, Gundel has exposed Dollar General's unsafe working conditions and staffing concerns. Gundel has created the hashtag #PutInaTicket to mock the Company's poor bureaucratic response to workers' complaints.[55]

42.     Fed up with their unfair treatment and frustrated by the Company's persistent ignorance of their grievances, Gundel has organized protests against Dollar General, store

---

[52] CeFaan Kim, *Masked robbers tie up workers in Queens dollar store robbery,* Eyewitness News, (Feb. 25, 2018), https://abc7ny.com/queens-dollar-store-robbery-in-general/3139633/; Complaint, *King v. Dollar General Corp.,* No. 3:180-cv-03414-G, (N.D. Tex. 2018), ECF No. 1.

[53] Nathaniel Meyersohn, *Dollar General is cheap, popular and spreading across America. It's also a robbery magnet, police say,* CNN, https://www.cnn.com/2020/06/26/business/dollar-general-robberies/index.html (last updated Jun. 26, 2020, 12:24 p.m.-EDT) ("*CNN Dollar General Robbery Article*").

[54] Melissa Eck, *Dollar General manager fired for posting TikToks of staffing shortages, difficult hours,* FOX 56 (Apr. 19, 2022), https://fox56.com/news/offbeat/dollar-general-manager-fired-for-posting-tiktoks-of-staffing-shortages-difficult-hours-department-of-labor-osha-occupational-safety-and-health-administration-blocked-electrical-panels-obstructed-exists-workplace-injury-put-in-a-ticket-uber-lyft-walkout ("Gundel Article").

[55] *Id.*

17

walkouts, radio discussions and is continuously sharing the complaints of Dollar General employees nationwide on her social media platform.[56]

43.     Gundel repeatedly emphasizes that Dollar General employees "have the legal right to demand better at work" and often encourages Dollar General employees to file safety complaints with OSHA, participate in strikes and or marches, and raise employee safety concerns with the Company as well as on her own platform.[57]

44.     Dollar General's Board ███████████  #PutInATicket movement and ██

████████████████  Within Stockholder's production is DG_B&R_00000573 ████

█████████████████████████████████████████  Within this

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████[58]

45.     ███████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████



[56] Mary Gundel (@marygundel), TikTok, https://www.tiktok.com/@marygundel (last accessed Jan. 12, 2023).
[57] *Id.*
[58] DG_B&R_00000573 at '613.

18



**46.** In response ████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████[61] Yet,
OSHA fines and employee complaints continue to pile up like the fire-hazard boxes outside of
nearly every Dollar General store. Dollar General remains oblivious to its problems.

**47.** With respect to the #PutInATicket movement, ██████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████ *See* DG_B&R_00001464 at '615.

**48.** Here, ██████████████████████████████████
████████████████████████████████████████████████

---

[59] *Id.* at '614 (emphasis not added).
[60] *Id.* at '615.
[61] *Id.* at '633-34.
[62]

█████████████████████████████████████████████████████

████████████████████ *Id.*

### D. Management Applied Cosmetic Changes That Did Little To Address Workplace Safety

49.     Dollar General's Board applied cosmetic changes to its severe workplace safety concerns solely to assure investors that their investments were secure and Dollar General's profitability continued to grow. What the Company truly did, however, was apply a lipstick on a pig in a futile effort to disguise its fundamental failings.

50.     ████████████████████████████████████████████

███████████████████████████ *See* DG_B&R_00002262. ████████████

███████████████████████████████████████████████████

█████████████████████.[63]



51.     At the same ██████████████████████████████████████

████████████████████████████████████████████ *See* DG_B&R_00001680. ████████████████████████████████████████

██████████████

███████████████████████████████████████



52.     On ████████████████████████████████████████

████████████████████████████ *See* DG_B&R_00002302. ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████[64]

53.     Similarly, on ████████████████████████████████

████████████████████████████ *See* DG_B&R_00002101. ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

54.     On ████████████████████████████████████████

████████████████████████████████████████████████

█████████████ *See* DG_B&R_00002537. At this meeting, ██████████

████████████████████████████████████████████████

---

[64] *Id.* at '324; *see also* DG_B&R_00002465 at '486 ███████████████████

████████



██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████ [65]

████████████████████████████████
████████████████████████████     ██████
████████████████████████████████     ██
████████████████████████████████████

55.    Further, ████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

56.    On ████████████████████████████████████████

████████████████████████████████████████████  *See*

DG_B&R_00000926. ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████  ██

████████████████████████████████
████████████████████████████     ██████
████████████████████████████████     ██
████████████████████████████████████

---

[65] *Id.* at '570.
[66] *Id.* at '965.

57.     For four consecutive years and on numerous accounts, members of the Audit Committee and certain Defendants were given nearly identical materials with bolded language emphasizing the Company's OSHA noncompliance: "significant fines," "warning metrics," "negative," "increased scrutiny," and "catastrophic risks." *See* DG_B&R_0000262 at '280; DG_B&R_00002537 at '570; and DG_B&R_00000926 at' 965. Nonetheless, members of the Audit Committee and certain Board Members willfully disregarded the Company's pervasive noncompliance issues with OSHA and instead of remedying the issues, simply paid for the violation with the Company's and shareholders' money.

58.     On August 27, 2019, the Audit Committee held a meeting. Defendants Rhodes, Bryant, Calbert, Fili-Krushel, McGuire, Santana and Vasos were present. *See* DG_B&R_00001060. An individual present at the meeting commented on the Company's 2019 enterprise risk management program. He noted that the risk outlook for each year remained unchanged and the catastrophic risk update "had not changed year-over year . . ." *Id.* at '062. In the internal 2019 audit materials presented to the Audit Committee, the "Catastrophic Risks" section revealed that the Company was facing **"*significant regulatory non-compliance that results in sizeable fines and/or sanctions (e.g., OSHA . . .)***. *Id.* at '098. With blatant language once again, the Audit Committee and several Defendants were made aware of its "catastrophic" noncompliance risks.

59.     On May 26-27, 2020, the Board of Directors held a regularly scheduled meeting. Present at this meeting were Defendants Calbert, Bryant, Fili-Krushel, McGuire, Rhodes, Sandler, Santana, Vasos and Owen. *See* DG_B&R_00001175. At the meeting, the Board was presented with additional materials, which included a "Media Response" presentation. *See* DG_B&R_00001464. The Board was then presented with the following themes of the Company's

23

███████████████████████.[67]



60.     Here, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████     *See* DG_B&R_00001464 at '477.  █████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████

61.     On ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████  *See* DG_B&R_00000087. █████████

████████████████████████████████████████████████████████████

██████████████  *See* DG_B&R_0000001. ████████████████████████

████████████████████████████████████████████████████████████

---

[67] *See* DG_B&R_00001464 at '470.

[68] ████████████████████████████████████████████████████████████
███████████. *See* DG_B&R_00000001 at '033.

62. ██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████. *See* DG_B&R_00000306 at '319.

63.        In short, the window dressings instituted by Dollar General did nothing to reduce the number of OSHA violations. ████████████████████████████████

██████████████████████████████████████████████████

██████████████████ *See* DG_B&R_00000001 at '032-034.

64.        On ████████████████████████████████████████████████ *See* DG_B&R_00000306; *See* DG_B&R_0000001. ████████████

██████████████████████████████████████████████████

██████████████████ *See* DG_B&R_0000001 at '034; DG_B&R_00000306 at '330. ████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ DG_B&R_00000087. ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

65.     After receiving notice of the Company's blatant workplace safety noncompliance and record-breaking OSHA penalties in 2020, the Director Defendants applied a series of window dressing changes, which amounted to no meaningful corporate reform. To date, the Director Defendants are still sleeping at the switch while the Company, and the Director Defendants themselves, continue to reap its lucrative benefits.

66.     On ████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████ *See* DG_B&R_00001009. ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

67.     On ████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████. *See* DG_B&R_00000133. ████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

[REDACTED] [69]

[REDACTED]

68.        Instead of addressing the issue of workplace safety head-on, Dollar General, on numerous accounts, chose to sweep its hazardous employee safety violations under the rug, which ultimately has created one, gigantic problem. [REDACTED]

69.        On [REDACTED] DG_B&R_00000204. [REDACTED]

[REDACTED] [70]

[REDACTED]

70.        [REDACTED]

---

[69] *See* DG_B&R_00001233 at '1241.
[70] *See* DG_B&R_00000204at '246.

DG_B&R_00000349. █████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████

71.     On████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████ *See* DG_B&R_00000087. ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

          ████████████████████████████████████████████
          ████████████████████████████████████
          ████████████████████████████████████

72.     Rather than addressing the employee safety itself, Dollar General's ████████████

████████████████████████████████████████████████████████████

████████████████████ The minor changes implemented by the Company during this time, were

to no avail. ████████████████████████████████████████████████

███████████████ *See* DG_B&R_00000001. ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████ *See* DG_B&R_00000306 at

'328. ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████. *Id.*

73.     To make matters worse, ███████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████*See*

DG_B&R_00000001 at '034. For example, ██████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████*Id.*; *see*

*also* DG_B&R_00000349 at '373. Once again, the Company turned a blind eye to its enormous

OSHA problems.

74.     On ██████████████████████████████████████████

███████████████████████████████████*See* DG_B&R_00000464. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████*Id.* at '520. ████████████████

████████████████████████████████████[71]

---

[71] DG_B&R_00000464 at '521.

29



75.     Each Board and Committee Member, ████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████ █

  █    ███████████████████████████████
  █    ███████████████████████████████

76.     On ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

██████ *See* DG_B&R_00000037. ██████████████████████████████████
████████████████████████████████████████████████████████████████

---

[72] *Id.* at '523.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████

77. ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████

78. On ████████████████████████████████████

*See* DG_B&R_00000712. █████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████

79. Also ██████████████████████████████████

*See* DG_B&R_00000573 at '608. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ *Id.* at '633; DG_B&R_0000001 at '022.

80.     Dollar General continues to suffer reputational harm while directors are still sleeping at the switch six years after the issue was first brought to their attention. Not only is the Board ignoring the Company's reputational harm, but Dollar General is bleeding money while the Board does nothing. For example, on the date the NBC article was released that exposed Dollar General's workplace safety problems, Dollar General's stock fell $1.65 and closed at $173.60 on May 7, 2020. Similarly, on May 2, 2022, the date of Dollar General's national walk-out in protest of the Company's working conditions, Dollar General's stock fell $2.34 and closed at $236.17, wiping out more than $500 million of investors' and the Company's wealth.

## V.     DUTIES OF DIRECTOR DEFENDANTS

### A.     The Fiduciary Duties of Director Defendants

81.     Each Director Defendant, by virtue of his or her position as a director and/or officer, to the Company and to its stockholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Dollar General, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its stockholders that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

82.     Director Defendants, because of their positions of control and authority as directors

32

of Dollar General, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

83. At all times relevant hereto, each Director Defendant was the agent of each of the other Director Defendants and of Dollar General and was at all times acting within the course and scope of such agency.

84. To discharge their duties, each Director Defendant was required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, Director Defendants were required to, among other things:

    a) Exercise good faith to ensure that the affairs of Dollar General were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

    b) Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and in compliance with all applicable federal and state laws, rules, regulations, and requirements; and

    c) Refrain from wasting the Company's assets or otherwise unduly benefitting themselves at the expense of the Company.

## VI.    DAMAGES TO THE COMPANY

85. As a result of the Director Defendants' improprieties, Dollar General engaged in a systemic unlawful pattern and practice of permitting hazardous working conditions and crime. Dollar General's conduct violated applicable federal and state laws and regulations and operated to the detriment of the Company and its shareholders. State and federal governmental enforcement agencies such as OSHA have the authority to impose severe monetary penalties and other forms of sanctions should they continue to find that Dollar General's conduct violated the laws with respect to which they have enforcement powers.

86. Further, regulations promulgated by OSHA make clear that a company is liable for acts of unsafe workplace conditions by its employees when it knows, or should have known, about

the misconduct, unless the company shows that it took immediate and appropriate corrective action. Associated enforcement guidance and judicial rulings confirm that companies must undertake a thorough investigation and impose appropriate remedial measures when they learn of unsafe working conditions. Otherwise, they are liable for failing to remedy these unsafe work environments.

87.     As a direct and proximate result of the Director Defendants' actions, Dollar General has expended, and will continue to expend, significant sums of money. Such expenditures include, but are not limited to:

a) costs incurred from paying additional OSHA penalties for new violations, willful violations and repeat violations within Dollar General stores;

b) costs incurred from implementing any corrective and/or remedial measures ordered by state and federal authorities or agreed to by virtue of a settlement or a compromise;

c) costs incurred from defending and settling potential regulatory and civil actions against the Company; and

d) costs incurred from compensation and benefits paid to the Director Defendants who have breached their fiduciary duties to Dollar General.

88.     As a result of these unsafe working conditions surrounding Dollar General, the Company has lost and will continue to lose employees, which will further exacerbate harm to Dollar General.

89.     Finally, Dollar General's business, goodwill, and reputation have been, and will continue to be, severely damaged by the Director Defendants' decision to allow and/or failure to prevent the Company's systemic violation of state and federal laws.

## VII.     DERIVATIVE ALLEGATIONS

90.     Plaintiff brings this action derivatively in the right and for the benefit of Dollar General to redress injuries suffered, and to be suffered, by Dollar General and its employees and a direct result of the Director Defendants' breaches of fiduciary duty, waste of corporate assets,

34

and unjust enrichment. Dollar General is named as a nominal defendant solely in its derivative capacity. This is now a collusive action to confer jurisdiction on this Court that it would not otherwise have.

91.     Plaintiff will adequately and fairly represent the interests of Dollar General in enforcing and prosecuting its rights.

92.     Plaintiff is a stockholder of Dollar General at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Dollar General stockholder.

93.     The current Dollar General Board consists of the following ten individuals: defendants Jeffery C. Owen, Michael M. Calbert, Warren Bryant, Ana Chadwick, Patricia Fili-Krushel, Timothy McGuire, William C. Rhodes III, Debra A. Sandler, Ralph Santana and Todd Vasos.

## VIII.   DEMAND FUTILITY ALLEGATIONS

94.     Plaintiff has not made a demand on Dollar General's Board to investigate the wrongdoing alleged herein. Such a demand would be a futile and wasteful act for the reasons set forth below. Under such circumstances, demand is excused.

95.     First, the Director Defendants had an obligation to ensure that Dollar General complied with the law that they shirked. Faced with knowledge that Dollar General was engaging in a systematic and widespread practice of hazardous and unsafe working conditions, the Director Defendants caused or allowed the Company to continue to misconduct and place Dollar General employees in harms' way. Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take any meaningful action to remedy the resultant harm.

96.     Second, the Director Defendants unheeded the very responsibilities that Dollar

General's own Business Code of Ethics imposed on them. Specifically, Dollar General's "Code of Business Conduct and Ethics" expressly states that it "ensure[s] a safe workplace by following all-safety related signs and instructions and by taking steps to prevent accidents." The Business Code of Ethics explicitly acknowledges that "safety is very important."[73]

97.     Notwithstanding these very clear provisions, there is little doubt that the Board members deserted their responsibility to uphold them in failing to take any meaningful action to remedy the harm Dollar General suffered as a result of the purposeful breach of its fiduciary duties. This harm was not only suffered by the Company, but also by its employees – some of which who have lost their lives due to Dollar General's willful disregard for employee safety. For instance, on August 10, 2017, a manager of a Dollar General store in Baltimore was shot and killed during a robbery, which then escalated to murder.[74]

98.     Dollar General has placed its profits before its employees' safety within the four corners of its stores. The Board was repeatedly confronted with information that should have put its members on notice that Dollar General was subjecting its employees to cruel and dangerous working conditions.[75]

99.     At all relevant times, Defendant Vasos was a non-independent director. Defendant Vasos was Chief Executive Officer of Dollar General for the majority of the relevant period and is the largest, and controlling, shareholder of Dollar General. As of April 1, 2022, Defendant Vasos owns 424,771 shares of Dollar General stock and his annual compensation for 2021 was $16,618,

---

[73] *See supra* note 11 at p. 4.
[74] *Surveillance Video In Murder Of Dollar General Manager Released*, CBS Baltimore (Aug. 10, 2017, 6:00 p.m.), https://www.cbsnews.com/baltimore/news/dollar-general-murder/.
[75] *See, supra* note 6 at '160, Audit Committee Meeting on March 16, 2021, informing Board Members that, "In mid-2020, there were several news articles published related to employee safety alleging the Company wasn't doing enough to protect employees in high crime locations."

36

873.[76] ████████████████████████████████████████████████████████

████████████████████████████████████████████. As an employee, Vasos derives substantially all his income from his employment and stock holdings with Dollar General, thus he could not disinterestedly consider a demand for action that might require him to sue the directors and/or fellow members of management with whom he works on a day-to-day basis.

100.    Defendant Owen is currently Dollar General's Chief Executive Officer and was not therefore independent. Owens began serving as Chief Executive Officer in 2022 when Dollar General was notoriously and repeatedly called out by the U.S. Department of Labor for its grossly inadequate measure to protect its employees. Prior to his appointment as Chief Executive Officer, he served as Chief Operating Officer from August 2019 to November 2022 and as Executive Vice President, Store Operations, from June 2015 until August 2019. Defendant Owen began his employment at Dollar General in December 1982. ████████████████████████████

████████████████████████████████████████████ As an employee, Owen derives substantially all of his income from his employment and stock holdings with Dollar General, thus he could not disinterestedly consider a demand for action that might require him to sue the directors and/or fellow members of management with whom he works on a day-to-day basis.

101.    Defendant Wenkoff has served as Dollar General's Executive Vice President and Chief Information Officer at all relevant times. As an employee, Wenkoff derives substantially all of his income from his employment and stock holdings with Dollar General, thus he could not disinterestedly consider a demand for action that might require him to sue the directors and/or fellow members of management with whom he works on a day-to-day basis.

---

[76] *See, supra* note 14.

102.     Defendant Calbert has served as Director and Chairman of the Board at all relevant times. Defendant Calbert was only absent from one Audit Committee in 2022. ████████████ ████████████████████████████████████████████████████████████ As an employee, Calbert derives substantially all of his income from his employment and stock holdings with Dollar General, thus he could not disinterestedly consider a demand for action that might require him to sue the directors and/or fellow members of management with whom he works on a day-to-day basis. As of April 1, 2022, Defendant Calbert owned 110,582 shares of Dollar General stock.

103.     Defendants Rhodes, Bryant, McGuire and Santana ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

104.     The Nominating, Governance and Corporate Responsibility Committee (Defendants Calbert, Sandler, Santana and Fili-Krushel) are disabled from objectively considering pre-suit demand to bring these claims because, as members of the Nominating, Governance and Corporate Responsibility Committee during the relevant period, they face a substantial likelihood of liability for wrongdoing. Dollar General's Corporate Governance Guidelines expressly state, "each director is responsible for complying with all Company policies and procedures applicable to members of the Board, including without limitation the Code of Business Conduct and Ethics . . ."[77] Nonetheless, the Nominating, Governance and Corporate Responsibility Committee had

_____

[77] See, supra note 10.

oversight responsibilities for the Company's compliance with Company policies and procedures, and was charged with overseeing such compliance. It was their decision not to take timely action to put the Company in compliance with its own procedures that placed safety as a top concern. Timely action by the Nominating, Governance and Corporate Responsibility Committee would have prevented, or at least minimized, the damages caused to Dollar General and its shareholders by the wrongdoing discussed herein.

105.     The Audit Committee Defendants (Defendants Chadwick, Rhodes, Sandler and Bryant) are also disabled from objectively considering pre-suit demand to bring these claims because, as members of the Audit Committee during the relevant period, they face a substantial likelihood of liability for wrongdoing. The Audit Committee's primary purposes is to "Assist Board oversight of . . . (2) the Company's compliance with legal and regulatory requirements."[78] It was their decision as Audit Committee members not to take timely action to put Company in compliance with its own procedures that placed safety as a top concern. Timely action by the Audit Committee would have prevented, or at least minimized, the damages caused to Dollar General and its shareholders by the wrongdoing discussed herein.

106.     The Compensation Committee Defendants (Bryant, McGuire and Fili-Krushel) are disabled from objectively considering pre-suit demand to bring these claims because, as members of the Compensation Committee during the relevant period, they face a substantial likelihood of liability for wrongdoing. The Compensation Committee had oversight responsibilities for the Company's internal control policies and procedures and was required to ensure that the Company was operating in accordance with its prescribed policies, procedures, and codes of conduct. It was their decision as Compensation Committee members not to take timely action to put Company in

---

[78] *See, supra* note 8.

compliance with its own procedures that placed safety as a top concern. Timely action by the Compensation Committee would have prevented, or at least minimized, the damages caused to Dollar General and its shareholders by the wrongdoing discussed herein.

107.    Pursuant to Dollar General Corporation's Compensation Committee Charter[79], the CEO's compensation must reflect corporate goals and objectives and his performance must be evaluated in light of these objectives. Dollar General is boasting safety as one of its top priorities. According to Dollar General's "Code of Business Conduct and Ethics," safety is very important. Dollar General's management pretends to "ensure a safe workplace by following all-safety related signs and instructions and by taking steps to prevent accidents."[80] For years, the CEO certainly did not consider safety as one of his top priorities contrary to Dollar General's own Code of Business Conduct and Ethics. He failed miserably at meeting –yet alone achieving—the objectives of this very code. However, his compensation cannot be deemed to have reflected corporate goals and objectives. For 2021, CEO Vasos' compensation was a whopping $16,618,873.[81]

108.    Dollar General has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not caused the Company to take action to recover for the Company the damages it has suffered and will suffer thereby.

109.    The Director Defendants knew of the detrimental working conditions taking place at the Company. These violations were open and notorious and were either known to or recklessly disregarded, by the Director Defendants. The Director Defendants, however, took no action to stop or prevent the substantial damage caused to the Company and its shareholders by those violations.

---

[79] See, supra note 8.
[80] See, supra note 11.
[81] See, supra note 14.

40

The Director Defendants were required to investigate and take action to prevent damage to Dollar General and its stockholders but failed to take timely action. Thus, the Director Defendants would have refused to institute this action.

110.     The acts complaint of herein are illegal, unsafe, and improper and constitute as breaches of fiduciary duties by the Director Defendants and are, thus, incapable of ratification.

111.     Publicly traded companies, such as Dollar General, typically carry Director & Officer liability insurance from which the Company could potentially recover some or all of its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that would foreclose a recovery from the insurers in the event that Dollar General sues to recover its damages from the Board.

112.     The Director Defendants were aware of, but failed to investigate, red flags of illegal, unethical, or improper conduct and failed to take any timely action to prevent, or at least minimize, the damages caused.

113.     The Director Defendants herein, received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board and their control of Dollar General. They have thus benefitted from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof and are incapable of exercising independent objective judgement in deciding whether to bring this action.

114.     The Director Defendants' disregard of illegal and improper conduct, as embodied by their systematic failure to implement and maintain adequate internal controls sufficient to monitor and prevent the officers, directors, employees, and agents of the Company from violating or acting in contravention to applicable laws, rules and regulations, and the Company's Code of

Business Conduct and Ethics, constitutes breaches of their duties of good faith and loyalty such that they face a substantial likelihood of liability for their actions/inactions.

## IX.    CAUSES OF ACTION

### COUNT ONE

**Derivatively Against Director Defendants for Breach of Fiduciary Duties**

115.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

116.    The Director Defendants owed and still owe Dollar General and its shareholders fiduciary duties. By reason of their fiduciary relationships, the Director Defendants owed and owe Dollar General and its shareholders the highest obligations of loyalty and due care in the administration of the affairs of the Company, including, without limitation, the oversight of Dollar General compliance with and the duty to conduct good faith investigation into known violations of laws, regulations, and internal policies concerning workplace safety.

117.    The Director Defendants violated and breached their fiduciary duties of loyalty and due care by allowing: (i) unsafe working conditions and repeatedly placing employees in harm's way for several years; and (ii) failing to exercise proper oversight and remedy Dollar General's high crime rates.

118.    As a direct and proximate result of the Director Defendants' failure to perform their fiduciary obligations, Dollar General has sustained, and will continue to sustain, significant damages – both financial and to its talent, corporate image, and goodwill. As a result of the misconduct alleged herein, the Director Defendants are liable to the Company for the damages resulting directly and proximately from their breaches of fiduciary duties.

119.    Plaintiff, on behalf of Dollar General, has no adequate remedy at law.

## COUNT TWO

### Against the Director Defendants for Waste of Corporate Assets

120.     Plaintiff incorporates by reference and realleges each and every allegation contained in the above, as though fully set forth herein.

121.     As detailed above, the Director Defendants diverted corporate assets for improper and unnecessary purposes to protect their positions as officers and directors (and the financial and other benefits flowing therefrom).

122.     The Director Defendants knowingly unheeded their corporate stewardship responsibilities and intentionally breached their fiduciary duties to protect the rights and interests of Dollar General, by failing to address its long-standing history of hazardous workplace conditions and high crime rates for over six years.

123.     In light of Dollar General's management not achieving its stated goals, the Board should have clawed back executive compensation. The Board's failure to do so has amounted to corporate waste.

124.     As a direct and proximate result of the Director Defendants' conscious failure to perform their fiduciary obligations as set forth herein, they have caused the Company to waste valuable corporate assets and expend corporate funds unnecessarily by providing each Director Defendant with excessive and unjustified compensation during the time periods when hazardous workplace conditions and high crime rates at Dollar General flourished.

125.     As a result of the waste of corporate assets, the Director Defendants are liable to the Company.

## COUNT THREE

### Against Todd Vasos for Unjust Enrichment

126.     Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

127. As alleged in detail herein, former Chief Executive officer Todd Vasos has engaged in the alleged misconduct, and yet he received a total compensation of over $56 million between the years 2016 to 2021 inclusive.

128. Accordingly, Vasos received and will receive improper renumeration despite his widespread misconduct while at Dollar General. Vasos will thereby be unjustly enriched by his own wrongful acts.

129. To remedy the unjust enrichment of Vasos, the Court should order him to disgorge to the Company the amounts paid to him under the terms of his Employer Agreement, and/or his Stock Option Agreement.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Against all Director Defendants for the amount of damages sustained by the Company and as a result of the Director Defendants' wrongdoing as described herein, including breaches of fiduciary duty, in the amount to be determined at trial, but not less than $10,000,000;

B. Directing Dollar General to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws, and to protect Dollar General and its stockholders from a repeat of the damaging events described herein, and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

   a. A proposal to strengthen the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

   b. A proposal to strengthen the Company's internal reporting with respect to workplace hazards and violent crime;

44

c. A proposal to develop and implement procedures for greater stockholder input into the policies and guidelines of the Board; and

d. A provision to permit the stockholders of Dollar General to nominate three candidates for election to the Board to replace existing directors;

C. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of Director Defendants' trading activities or their other assets so as to assure Plaintiff on behalf of Dollar General has an effective remedy;

D. Awarding to Dollar General restitution from the Director Defendants, and ordering disgorgement of all profits, benefits, and other compensation obtained by each of them;

E. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F. Granting such other and further relief as the Court deems just and proper.

## XI. JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: January 20, 2023

s/*Paul Kent Bramlett*

Paul Kent Bramlett #7387
Robert Preston Bramlett #25895
**BRAMLETT LAW OFFICES**
40 Burton Hills Blvd., Suite 200
P. O. Box 150734
Nashville, TN 37215
Telephone: (615)-248-2828
Facsimile: (866)-816-4116
Email: pknashlaw@aol.com
　　　　Robert@BramlettLawOffices.com

45

Andrea Farah
Alesandra Greco
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914)-997-0500
Facsimile:  (914)-997-0035
Email: agreco@lowey.com
        afarah@lowey.com

*Attorneys for Plaintiff*

## VERIFICATION

I, Brent Conforti, hereby verify that I am a shareholder of Dollar General Corporation ("Dollar General" or the "Company") and am ready, willing, and able to pursue this shareholder derivative action on behalf of Dollar General. I am a shareholder of Dollar General common stock and have held shares in the Company at all times relevant in the Verified Stockholder Derivative Complaint. I have reviewed the allegations in the Verified Stockholder Derivative Complaint, and as to those allegations of which I have personal knowledge, I know those allegations to be true, accurate, and complete. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation, and for that reason I believe them to be true. Have received a copy of the foregoing complaint, and having reviewed it with my counsel, I hereby authorize its filing.

_____
Brent Conforti

OFFICIAL STAMP
ULISES MONARREZ
NOTARY PUBLIC-OREGON
COMMISSION NO. 988677
MY COMMISSION EXPIRES JUNE 18, 2023