# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| BRENT CONFORTI, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:23-CV-00059 |
| Plaintiff, | |
| v. | **AMENDED VERIFIED STOCKHOLDER DERIVATIVE FOR VIOLATIONS OF FEDERAL SECURITIES LAWS, BREACH OF FIDUCIARY DUTIES, AND WASTE OF CORPORATE ASSETS** |
| JEFFREY C. OWEN; MICHAEL M. CALBERT; WARREN BRYANT; ANA CHADWICK; PATRICIA FILI-KRUSHEL; TIMOTHY MCGUIRE; WILLIAM C. RHODES III; DEBRA A. SANDLER; RALPH SANTANA; TODD VASOS; CARMAN WENKOFF; JOHN GARRATT; RHONDA TAYLOR; STEVE SUNDERLAND and AMELIA ELLIOTT, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| DOLLAR GENERAL CORPORATION, a Tennessee Corporation, | |
| Nominal Defendant. | |

Plaintiff Brent Conforti, derivatively on behalf of Dollar General Corporation ("Dollar General" or the "Company"), brings the following Amended Verified Stockholder Derivative Complaint ("Amended Complaint") against members of the Board of Directors (the "Board") and certain officers of Dollar General for breaches of fiduciary duties owed to the Company and its shareholders. Except for allegations specifically pertaining to Plaintiff's own acts, the allegations in the Amended Complaint are based upon information and belief, which include but are not limited to: documents produced to Plaintiff subject to a Confidentiality Agreement pursuant to

Tennessee Business Corporations Act § 48-26-102 ("Section 48-26-102"), the Company's public filings in the United States Securities and Exchange Commission (the "SEC"), public court filings, media and financial analyst reports, the Occupational Safety and Health Administration ("OSHA") website, and other public sources.

## I.        NATURE OF THE ACTION

1.        This case arises from a sustained failure of Dollar General's Board Members ("Director Defendants") and certain officers ("Officer Defendants," and collectively with Director Defendants, the "individual Defendants") to implement and maintain an effective system of internal controls in violation of their fiduciary duties. The Individual Defendants have permitted and condoned hazardous working conditions for its employees all while remaining deaf and blind to repeat OSHA violations and concerns.

2.        For at least the past eight years, Individual Defendants have shown a pattern of alarmingly willful disregard for federal safety standards, choosing to place profits over their employees' safety and wellbeing. Since 2017, OSHA has issued more than $15 million in fines and cited Dollar General and its subsidiary, Dolgencorp LLC ("Dolgencorp.") for numerous willful, repeat and serious workplace safety violations related to unsafe conditions in more than 180 inspections nationwide.[1] Over the past five years, OSHA found unsafe conditions that exposed workers to the possibility of being struck by falling boxes of merchandise or trapped or unable to exit the store safely in an emergency in more than 180 inspections at Dollar General stores nationwide.[2]

---

[1] U.S. Dept. of Labor, *News Release – Penalties Mount: Fined More Than $15M Since 2017, Familiar Dollar General Safety Failures In 3 Inspections In Florida, Alabama, Add $387K More* (Jan. 26, 2023), https://www.dol.gov/newsroom/releases/osha/osha20230126.
[2] U.S. Dept. of Labor, *OSHA News Release – Region 4,* Occupational Safety and Health Administration (Nov. 1, 2022), https://www.osha.gov/news/newsreleases/region4/11012022.

2

3.     Dollar General's troubles with workplace safety were thrust into public spotlight in 2021 when *CNN* published an explosive article detailing a systematic and widespread pattern of the Company's long history of OSHA violations and repeated failures to protect its workers from on-the-job hazards. Within the article was quoted the Assistant Secretary for OSHA, stating: "Dollar General has had a long history of disregarding safety measures to prevent serious injury or death in the event of a fire or other emergency…This company's troubled history of workplace safety violations must come to an end."[3]

4.     In addition to being one of OSHA's top violators since at least 2016, former executives, store employees, law enforcement officials, and retail security experts told CNN Business that in 2020, Dollar General was failing to protect workers from violent crime. Dollar General's thinly staffed stores and low-cost approach has left workers vulnerable to robberies and other safety hazards. At least six Dollar General employees have died during armed robberies from 2016 to 2020 and several other employees have been seriously injured.[4]

5.     Dollar General places its profits before employee peril. To date, Dollar General remains one of the fastest growing discount stores in the nation. The Company's profits have increased five-fold since 2010 and during that same period, its stock has increased 800%.[5] As of January 10, 2022, the Company's market cap is $53.87 billion, and the Company remains a Fortune 500 Company.[6]

6.     The Individual Defendants repeatedly turned a blind eye to the Company's long-

---

[3] Nathaniel Meyersohn, *Dollar General is putting workers' safety at risk, Labor Department says,* CNN (Dec. 15, 2021, 12:57 p.m.-EST), https://www.cnn.com/2021/12/15/business/dollar-general-osha-worker-safety/index.html ("*CNN Dollar General Robbery Article*").
[4] *Id.*
[5] *Id.*
[6] Dollar General, https://companiesmarketcap.com/dollar-general/marketcap/ (last visited Jan. 10, 2022).

3

standing culture of hazardous working conditions and violent crime. Even when armed with knowledge of repeat OSHA violations and rising crime rates, Director Defendants (as defined herein) applied window dressing to remedy gaping holes in the Company.[7] The Individual Defendants failed to: (i) investigate exorbitant and repeat OSHA violations; (ii) act to address OSHA noncompliance and high crime rates; and/or (iii) act to improve its policies and procedures to ensure employee complaints are heard and timely resolved. Furthermore, the Director Defendants failed to implement adequate internal controls and reporting programs to address employee concerns of unsafe working conditions. Instead of dealing with the pervasive safety issues, the Director Defendants chose to merely ███████████████[8] until the issues magically resolved themselves. Neither the Company's executives, nor its Board met its fiduciary duties to address workplace safety and violent crime at Dollar General, investigate when red flags appeared, and implement efficient protocols that would have ensured greater visibility into workplace hazards and violent crime at the Company. Their breaches helped ensure these hazardous conditions remained omnipresent in Dollar General stores nationwide.

7.     As a result of their membership on one of more of the Board's Committees, the Director Defendants were subject to additional responsibilities, which they abdicated. For instance, one of the Audit Committee's primary purposes is to "Assist Board oversight of . . . (2) the Company's compliance with legal and regulatory requirements."[9] With respect to ethical and legal

---

[7] *See, e.g.*, DG_B&R_00000133, ████████████████████████████████████

[8] *See* DG_B&R_00000573, ████████████████████████ discussing awareness of ████████████

[9] *See Dollar General Corporation Audit Committee Charter*, https://investor.dollargeneral.com/ download/companies/dollargeneral/Committee%20Charters/Charter--Audit%20Committee%20 (08-25-21%20Final).pdf (last accessed Nov. 15, 2022).

4

compliance, the Audit Committee must, "[e]stablish procedures for (a) the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and (b) the confidential, anonymous submission by Company employees of concerns regarding questionable accounting or auditing matters . . . Discuss with the Company's General Counsel legal matters that may have a material impact on the financial statements or the Company's compliance policies.[10] Likewise, Dollar General's Corporate Governance Guidelines expressly state, "each director is responsible for complying with all Company policies and procedures applicable to members of the Board, including without limitation the Code of Business Conduct and Ethics . . ."[11]

8.      Despite its inaction and piling OSHA penalties, the Board is not shy about boasting safety as one of its top priorities. According to Dollar General's "Code of Business Conduct and Ethics," safety is very important. Dollar General "ensure[s] a safe workplace by following all-safety related signs and instructions and by taking steps to prevent accidents."[12]

9.      The purported steps the Company has taken to ensure safety have now culminated into OSHA decorating Dollar General with "Severe Violator" status, only reserved for the select few entities who violate OSHA standards at the gravest levels.

10.     Through this derivative action, Plaintiff seeks to hold the Individual Defendants accountable for permitting an unsafe work environment detailed here, for failing to properly oversee a system designed to rectify unsafe working conditions despite the Company's long history

---

[10] *Id.*

[11] *See Dollar General Corporate Governance Guidelines,* https://investor.dollargeneral.com/download/companies/dollargeneral/CorporateGovernance/Governance%20Principles-08.23.22.pdf (last accessed Nov. 15, 2022).

[12] Dollar General, *Serving Others: Dollar General's Code of Business Conduct and Ethics*, https://investor.dollargeneral.com/dollargeneral/pdf/DG_Code_of_Ethics_4-2015.pdf (last accessed Feb. 6, 2023).

5

of safety violations and violent crime.

## II.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1132 in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interests and costs.

12.    Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because (i) Dollar General maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' unlawful conduct and violation of fiduciary duties owed to Dollar General occurred in this District; and (iv) some Individual Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## III.    PARTIES

### A.    Plaintiff

13.    Plaintiff is and was at all times relevant hereto, a holder of Dollar General common stock and resides in Lane County, Oregon. Plaintiff is committed to retaining Dollar General shares throughout the pendency of this action to preserve his standing. Plaintiff will adequately and fairly represent the interests of Dollar General. On June 10, 2022, Plaintiff, by his attorneys, made a written demand to Dollar General pursuant to Tenn. Code Ann. § 48-26-102 to compel inspection of books and records (the "Books and Records Complaint"). ███████████████████████
████████████████████████████████████████████[13]

---

[13] *See, supra* note 12.

Case 3:23-cv-00059   Document 14   Filed 02/13/23   Page 6 of 64 PageID #: 224

### B.    Nominal Defendant

14.    Nominal Defendant Dollar General is a Tennessee corporation with its principal executive offices located at 100 Mission Ridge, Goodlettsville, Tennessee 37072. The Company's stock is traded on the New York Stock Exchange under the ticker symbol "DG." As of August 19, 2022, Dollar General had more than 225,571,729 shares outstanding.[14] Dollar General is one of the largest discount retailers in the nation and offers a broad selection of low-priced merchandise.

### C.    Director Defendants

15.    Todd J. Vasos ("Vasos") has served as Senior Advisor since November 2022 and as a member of the Board since June 2015. He joined Dollar General in December 2008 as Executive Vice President, Division President and Chief Merchandising Officer and was promoted to Chief Operating Officer in November 2013 and to Chief Executive Officer in June 2015.[15] Defendant Vasos knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant Vasos owns 424,771 shares of Dollar General stock and his annual compensation for 2021 was $16,618,873.[16]

16.    Jeffery C. Owen ("Owen") has served as Chief Executive Officer and as a member of Dollar General's Board since November 2022. He previously served as Chief Operating Officer

---

[14] Dollar General Corp., Quarterly Report (Form 10-Q) (July 29, 2022), https://www.sec.gov/ix?doc=/Archives/edgar/data/29534/000155837022013950/dg-20220729x10q.htm.

[15] Dollar General, https://investor.dollargeneral.com/websites/dollargeneral/English/5100/board-of-directors.html (last visited Feb. 9, 2023).

[16] *See* Dollar General Corp., Proxy Statement (Schedule 14A), https://www.sec.gov/Archives/edgar/data/29534/000110465922041763/tm2135878-1_def14a.htm (last accessed Jan. 11, 2023).

at Dollar General from August 2019 to November 2022. He returned to Dollar General in June 2015 as Executive Vice President of Store Operations.[17] Defendant Owen knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant Owen owns 226,402 shares of Dollar General stock and his annual compensation for 2021 was $4,975,694.[18]

17.     Michael M. Calbert ("Calbert") has served as Chairman of the Board since January 2016. Defendant Calbert has led numerous executive sessions of Dollar General's directors and its non-management directors and is the current Chair of the Nominating, Governance & Corporate Responsibility Committee.[19] Defendant Calbert knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant Calbert owns 110,582 shares of Dollar General stock.[20]

18.     Warren F. Bryant ("Bryant") has been a Director of the Board since 2009 and is a member of both the Compensation Committee and the Audit Committee.[21] Defendant Bryant knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal

---

[17] Dollar General, https://investor.dollargeneral.com/websites/dollargeneral/English/5100/board-of-directors.html (last visited Jan. 4, 2023).
[18] *See*, *supra* note 16.
[19] *See, supra* note 15.
[20] *See, supra* note 16.
[21] *See, supra* notes 15 and 16.

8

controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations.

19.     Debra A. Sandler ("Sandler") has served as a Director since 2020[22] and is a member of the Nominating, Governance & Corporate Responsibility Committee and the Audit Committee.[23] Defendant Sandler knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations.

20.     William C. Rhodes III ("Rhodes") has served as a Director of the Board since 2009,[24] and serves as Chair of the Audit Committee.[25] Defendant Rhodes knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations.

21.     Ralph E. Santana ("Santana") has served as a Director of the Board since 2018[26] and serves as a member of the Nominating Governance & Corporate Responsibility Committee.[27] Defendant Santana knowingly, recklessly, or with gross negligence made, caused, condoned, or

---

[22] *Dollar General Corporation Appoints Debra A. Sandler to Board of Directors; Increases Board Size from Eight to Nine Directors* (March 17, 2020), https://newscenter.dollargeneral.com/news/ dollar-general-corporation-appoints-debra-a-sandler-to-board-of-directors-increases-board-size-from-eight-to-nine-directors.htm.
[23] *See, supra* note 15.
[24] Dollar General, https://www.comparably.com/companies/dollar-general/william-c-rhodes-iii (last accessed Jan. 12, 2023).
[25] *See, supra* note 15.
[26] *Dollar General Appoints Two New Members to its Board of Directors,* Businesswire (Feb. 13, 2018, 6:55 a.m.), https://www.businesswire.com/news/home/20180213005566/en/Dollar-Gener al-Appoints-Two-New-Members-to-its-Board-of-Directors.
[27] *See, supra* note 15.

9

allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations.

22. Ana Chadwick ("Chadwick") has served as a Director of the Board since 2022[28] and serves as a member of the Audit Committee.[29] Defendant Chadwick knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations.

23. Timothy McGuire ("McGuire") has served as a Director of the Board since 2018[30] and is a member of the Compensation Committee.[31] Defendant McGuire knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant McGuire owns 6,819 shares of Dollar General stock.[32]

24. Patricia Fili-Krushel ("Fili-Krushel") has served as a Director of the Board since 2021[33] and is Chair of the Compensation Committee and a member of the Nominating, Governance & Corporate Responsibility Committee.[34] Defendant Fili-Krushel knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage

---

[28] *Dollar General Corporation Expands Board of Directors*, Businesswire (Jul. 29, 2022, 4:30 p.m.), https://www.businesswire.com/news/home/20220729005043/en/Dollar-General-Corporation-Expands-Board-of-Directors.
[29] *See, supra* note 15.
[30] *See, supra* note 26.
[31] *See, supra* note 15.
[32] *See, supra* note 16.
[33] *See, supra* note 16.
[34] *See, supra* note 15.

in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant Fili-Krushel owns 27, 352 shares of Dollar General stock.[35]

### D. Officer Defendants

25. Carman Wenkoff ("Wenkoff") served as Executive Vice President and Chief Information Officer since July 2017.[36] Defendant Wenkoff knowingly, recklessly, or with gross negligence made, caused, condoned, or allowed the Company to engage in unlawful practices as described herein, and has failed to implement adequate internal controls to ensure that Dollar General's activities complied with all applicable federal and state laws and regulations. As of April 1, 2022, Defendant Wenkoff owns 97,139 shares of Dollar General stock and his annual compensation for 2021 was $3,281,360.[37]

26. Defendant John Garratt ("Garratt") has served as President and Chief Financial Officer since September 2022.[38] He joined Dollar General in October 2014 as Senior Vice President, Finance and Strategy, and subsequently served as Interim Chief Financial Officer from July 2015 to December 2015, and as Executive Vice President and Chief Financial Officer from December 2015 to September 2022. As of April 1, 2022, Defendant Garratt owns 55,467 shares of Dollar General and his annual compensation for 2021 was $3,872,358.[39] On January 31, 2023, Garratt announced his intent to retire effective June 2, 2023.

---

[35] *See, supra* note 16.
[36] Dollar General, https://investor.dollargeneral.com/websites/dollargeneral/English/4000/management-team.html (last visited Feb. 9, 2023).
[37] *See, supra* note 16.
[38] *See, supra* note 16.
[39] *See, supra* note 16.

11

27.     Defendant Rhonda Taylor ("Taylor") has served as Executive Vice President and General Counsel since March 2015. She joined Dollar General as an Employment Attorney in March 2000 and was subsequently promoted to Senior Employment Attorney in 2001, Deputy General Counsel in 2004, Vice President and Assistant General Counsel in March 2010, and Senior Vice President and General Counsel in June 2013.[40] As of April 1, 2022, Defendant Taylor owns 98,350 shares of Dollar General stock and her annual compensation for 2021 was $3,436,975.[41]

28.     Defendant Steve Sunderland ("Sunderland") has served as Executive Vice President, Store Operations since August 2019. He joined Dollar General as Senior Vice President, Store Operations, in September 2014.[42]

29.     Defendant Anita Elliott ("Elliott") has served as Senior Vice President and Chief Accounting Officer since December 2015. She joined Dollar General as Senior Vice President and Controller in August 2005.[43]

## IV.     FACTUAL ALLEGATIONS

### A.     Dollar General Is One of Top Violators of OSHA Standards

30.     Dollar General is a Tennessee corporation with its headquarters in Goodlettsville, Tennessee. Dollar General was founded in 1939 is one of the largest discount retailers in the nation with more than 18,000 stores in 47 states as of February 25, 2022. The Company offers a broad selection of merchandise, including consumable items, seasonal items, home products, and apparel. Dollar General stores are widely known by shoppers for their low-prices merchandise. At the U.S. Department of Labor, the Company is recognized for its long history of violations and repeated failures to protect its workers from on-the-job hazards.

---

[40] *See, supra* note 16.
[41] *See, supra* note 16.
[42] *See, supra* note 16.
[43] *See, supra* note 16.

12

31.     Over the past six years, Dollar General has subjected more than 150,000 employees to increased safety risks and has become one of the OSHA's top violators. Since 2016, OSHA has proposed more than $3.3 million in safety violations in 54 inspections at Dollar General locations nationwide. As of January 23, 2023, Dollar General and its subsidiary, Dolgencorp, have been **fined more than $15 million** in penalties by OSHA for **numerous willful, repeat and serious** workplace safety violations nationwide.[44] The Company repeatedly faces scrutiny from OSHA, the Department of Labor, and news networks such as CNN and NBC, which expose the safety issues to the public in scandalous publications. Typically, these violations consist of fire hazards such as blocked electrical panels, obstructed exits, cluttered aisles, dimly lit stores, and rodent infestations.[45] In fact, on ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ [46]

32.     Worse, many Dollar General stores failed to remedy the safety violations even after OSHA penalized their non-compliance. For instance, in June of 2021, a federal inspection at a Dollar General in Mobile, Alabama found the store "again failed to keep the main storeroom orderly" to allow workers to exit safely during an emergency. This Alabama store also exposed workers to slip and trip hazards, falling boxes, prevented access to electrical panels and ultimately,

---

[44] U.S. Dept. of Labor, *UPDATED: INSPECTIONS FIND DOLLAR GENERAL CONTINUES TO DISCOUNT SAFETY AS VIOLATIONS, PENALTIES PILE UP FOR BLOCKED EXITS, UNSAFE STORAGE AREAS* (updated Nov. 28, 2022), https://www.osha.gov/news/newsreleases/region5/01232023.

[45] *See*, *supra* note 3; *see also* Dan Flynn, *Federal subpoena follows inspections after warning and recall at 'dollar stores.'* (Mar. 17, 2022), https://www.foodsafetynews.com/2022/03/federal-subpoena-follows-inspections-after-warning-and-recall-at-dollar-stores/; *see also* Monica Nakashima, *Bessemer Dollar General distribution center temporarily closed due to possible rat infestation*, CBS42 (Aug. 8, 2022), https://www.cbs42.com/news/local/bessemer-dollar-general-distribution-center-temporarily-closed-due-to-possible-rat-infestation/.

[46] *See* DG_B&R_00001464 at '469; and DG_B&R_00001175.

13

OSHA proposed $321,827 in fines for these violations.[47]

33.     Blocked exits and electrical boxes are also common OSHA violations. In August 2021, OSHA inspectors identified five *willful* violations at Dollar General stores in Georgia and Alabama for failing to keep receiving areas clean and orderly and stacking materials in an unsafe manner for their employees. OSHA defines a violation as "willful" when "the employer either knowingly failed to comply with a legal requirement (purposeful disregard) or acted with plain indifference to employee safety." As a result of these operations, OSHA proposed $638,680 in penalties for the Alabama stores and $364,629 in penalties for the store in Dalton, Georgia for similar conduct.[48] Similarly, Dollar General stores in Boone and Harrison counties, West Virginia were fined $169,000 for blocking store aisles and electrical boxes, obstructing emergency exit doors, and prohibiting access to escape routes in the event of an emergency and making it unsafe for employees to control lights, coolers and air conditioners.[49]

34.     Other Dollar General stores across the nation have received hefty fines as well: Sherman, Texas (fined $162,800 for obstructed exits); Hamburg, Pennsylvania (fined $113,300 for bolted and blocked exits, low light conditions for exits, unmarked exits, and blocked aisles); O'Fallon, Montana (fined $163,000 for obstructed emergency exits and exposing workers to fall hazards); Wichita, Kansas (fined $105,600 for blocked exit routes and materials stored near electrical panels, and fall and trip hazards) and several other stores have been similarly fined.[50]

---

[47] U.S. Dept. of Labor, *OSHA News Release – Region 4,* Occupational Safety and Health Administration (Dec. 13, 2021), https://www.osha.gov/news/newsreleases/region4/12132021.
[48] U.S. Dept. of Labor, *OSHA National News Release,* Occupational Safety and Health Administration (Feb. 24, 2022), https://www.osha.gov/news/newsreleases/national/02242022.
[49] U.S. Dept. of Labor, *OSHA Regional News Brief – Region 3,* Occupational Safety and Health Administration (Sept. 28, 2015), https://www.osha.gov/news/newsreleases/region3/09282015.
[50] U.S. Dept. of Labor, *OSHA Regional News Brief – Region 6,* Occupational Safety and Health Administration (Jan. 4, 2016), https://www.osha.gov/news/newsreleases/region6/01042016; U.S. Dept. of Labor, *OSHA Regional News Brief – Region 3,* Occupational Safety and Health

35.     On January 26, 2023, OSHA published yet another scathing press release, announcing that Dollar General failed 3 inspections in Florida and Alabama, adding another $387 thousand in fines. According to OSHA, "[j]ust weeks after being cited with federal safety violations, Dollar [General] and Dolgencorp LLC have once again exposed workers to unsafe conditions…" Traditionally, among the violations in these stores were merchandize blocking exit routes and exposing workers for fire and entrapment hazards.

36.     OSHA inspections of Dollar General stores in the Southeast in 2022 included the following: (i) seven inspections in Alabama, Georgia, and Florida that identified 31 violations that led to more than $2.7 million penalties in November; (ii) four inspections in Alabama, Georgia, and Florida that uncovered numerous hazards and $1.6 million in proposed penalties in October; (iii) three inspections in Georgia found workers exposed to fire, electrical, and entrapment hazards, resulting in proposed penalties of more than $1.2 million in August; (iii) four inspections in Mobile, Alabama, and Dalton, Georgia, led to more than $1 million in proposed penalties in February; and (iv) one inspection in Thomasville, Georgia found merchandise blocking an electrical panel and the store's only emergency exit door in the area, resulting in $290,054 in proposed penalties.[51] An OSHA Regional Administrator commented on this alarming trend, saying: "Dollar General's growing record of disregard for safety measures makes it abundantly clear that the [C]ompany puts profits before people."

37.     On January 23, 2023, OSHA identified five repeat safety violations and proposed

---

Administration (Oct. 29, 2015), https://www.osha.gov/news/newsreleases/region3/10292015; U.S. Dept. of Labor, *OSHA News Release-Region 7*, Occupational Safety and Health Administration (Feb. 1, 2016), https://www.osha.gov/news/newsreleases/region7/02012016; U.S. Dept. of Labor, *OSHA News Release – Region 7,* Occupational Safety and Health Administration (Aug. 2, 2016), https://www.osha.gov/news/newsreleases/region7/08022016-2, https://www.osha.gov/news/newsreleases/region5/01232023.
[51] *See, supra* note 1.

$395,717 in penalties at a Dollar General store in West Lafayette, Ohio for: (i) storing boxed material more than seven feet high on rolling containers throughout the retail area; (ii) blocking exit routes; (iii) allowing open bags of food, boxes and bins to be spread throughout the store; (iv) obstructing access to fire extinguishers with a ladder, boxes and carts; and (v) blocking access to electrical panels with boxes, bins and carts.[52] Dollar General's **_chronic failures to meet federal safety requirements prompted [OSHA] to include Dollar General Corp. and Dolgencorp LLC in OSHA's Severe Violator Enforcement Program_** ["SVEP"].**[53]**

38.    SVEP provides for concentrated resources on inspecting employers that have demonstrated indifference to the OSHA obligations by "committing willful, repeated, or failure-to-abate violations."  To qualify for SVEP: (i) OSHA finds at least one willful or repeated violation or issues failure-to-abate notice based on a serious violation directly related either to an employee death, or to an incident causing three or more employee hospitalizations; or (ii) OSHA finds at least two willful or repeated violations or issues failure-to-abate notices (or any combination of these violations/notices), based on the presence of high gravity serious violations.

39.    Unfortunately for the hard-working employees, Dollar General also has a history of rodent infestations and unsanitary conditions within its stores. On March 20, 2017, a Dollar General store in North Bend, Ohio was shut down due to live insects, rodents and other pests, a large amount of mice feces and nesting material in the facility, and build-up of dirt and debris. Dollar General stores were also shut down by the Health Department due to a rodent infestation in Indiana (2018) and in Pennsylvania for active pest infestation and keeping food in unsanitary

---

[52] U.S. Dept. of Labor, _OSHA News Release – Region 5_, "Safety shelved: Federal safety inspectors again find Dollar General workers exposed to fire, other hazards – this time in West Lafayette, Ohio (Jan. 23, 2023)," https://www.osha.gov/news/newsreleases/region5/01232023.
[53] _Id._

conditions (2021).[54]

40.     Over the course of six years, Dollar General has been lambasted by OSHA directors for their alarming inattention to workplace safety, cautioning that "OSHA will make every effort to hold them accountable for their failures."[55] According to OSHA area director Eugene Stewart, "(t)he company has ***failed to implement and verify that the necessary corrective actions*** have been taken to remove these hazards and protect their workers at these locations… Unfortunately, ***Dollar General has not made employee safety a priority, leaving its workers unnecessarily exposed to serious injury or death***."[56]

*41.*     On January 23, 2023, OSHA Area Director Larry Johnson, in Columbia, Ohio spoke out against Dollar General and said:

> Dollar General continues to ***intentionally ignore*** federal safety standards while the ***company's defiance*** shows they ***value profits more than the safety and wellbeing of its employees***…Dollar General's ***unwillingness*** to make changes across its organization and, as importantly, at stores where ***hazards persist*** should be a ***serious concern for workers and shoppers alike.***[57]

42.     In sum, OSHA has conducted hundreds of inspections at Dollar General and Dolgencorp stores nationwide and has imposed more than $15 million in fines. Shockingly, OSHA

---

[54] *Dollar General closes after inspectors find live rodents, insects found in store,* WLWT5 (Mar. 20, 2017), https://www.wlwt.com/article/dollar-general-closes-after-inspectors-report-live-rodents-insects-found-in-store/9156755; Katie Cox, *Marion Dollar General closed by health department after live and dead mice found in storage room,* WRTV, https://www.wrtv.com/news/local-news/grant-county/marion-dollar-general-closed-by-health-department-after-live-and-dead-mice-found-in-storage-room (last updated Oct. 25, 2018, 3:39 p.m.); *Sharpsburg Dollar General Slapped with Another Consumer Alert Over Mouse Infestation*, CBS Pittsburgh (Sept. 9, 2021), https://www.cbsnews.com/pittsburgh/news/sharpsburg-dollar-general-another-consumer-alert-mouse-infestation/.

[55] *See*, *supra* note 47.

[56] U.S. Dept. of Labor, *OSHA News Release – Region 4,* Occupational Safety and Health Administration (Apr. 14, 2016), https://www.osha.gov/news/newsreleases/region4/04142016.

[57] *See*, *supra* note 44.

17

has at least 100 federal safety inspections currently open at stores owned and operated by the Company.[58] Once again, OSHA inspectors have "found Dollar General stores ignoring federal safety standards and exposing their employees to hazardous working conditions in violation of the law."[59] All while OSHA and employees voice their concerns with Dollar General and its Board, the Board turns a deaf ear to these grave concerns and continues to place profits before peril.

### B.  Dollar General Stores Are, and Have Been, Crime Magnets

43.     Dollar General seeks to disappoint when it comes to high crime rates. Aside from the poor working conditions to which the Company exposes its employees, Dollar General stores are also crime hotspots. Several employees across Dollar General stores have been subject to and/or have lost their lives during armed robberies. At least six Dollar General employees have died during robberies since 2016, and other employees have been held at gunpoint numerous times. Employees have even resorted to bringing their own weapons into Dollar General stores for their own protection because, Dollar General "wouldn't do it."[60]

44.     Dollar General, according to an exposé published by CNN, has by far had the most robbery incidents compared to other local chains including Dollar Tree and Family Dollar.[61]

45.     In 2019, a former Dollar General employee, Dave Dukes started bringing his gun to work because he felt he "needed it to protect himself. . . [since] Dollar General wouldn't do it [for him]." After witnessing three robberies at his Dollar General store in Dayton, Ohio, this employee shot and killed a man in self-defense.[62] Specifically in Dayton, Ohio, seven Dollar General stores accounted for 29% of commercial robberies that year. Some of the enabling factors

---

[58] *Id.*
[59] *See, supra* note 44.
[60] *See, supra* note 3 ("*CNN Dollar General Robbery Article*").
[61] *Id.*
[62] *Id.*

contributing to these events, according to Daytona Police were blocked windows, high shelves, lack of maintenance outside the stores and lack of security guards at high incident locations.[63]

46.     Just a few weeks after this incident, someone robbed the nearby Dollar General store on Salem Avenue in November 2019. The robber wore a surgical mask and fired a gun before leaving.[64] Soon afterward, Edwin Goldsmith took a job at this Dollar General in Ohio and was subject to a robbery on St. Patrick's Day, two months after the store's latest incident.[65]

47.     Some Dollar General employees take cash deposits to the bank by themselves. The Company's policy in its 2019 store operating procedures states that stores should make one or two deposits each day depending on their location and that the deposits can only be made by "key carriers," or high-ranking employees.[66]

48.     Out of the seven Dollar General employees killed since 2016, two were shot as they left stores to deposit cash from the register at the bank.[67]

49.     Robberies at Dollar General occur at least on a weekly basis and are often covered in the news. Since CNN wrote an exposé on the safety conditions of Dollar General in June 2020, several other robberies have taken place at the Company at an alarming rate. For example, on October 16, 2020, a Dollar General Employee was found shot in the head after a customer told the police he had taken out the trash. Armed robberies also occurred on: November 30, 2021 in Birmingham, Alabama; December 21, 2021 in Little Falls, New York; January 14, 2022 in Detroit,

---

[63] *Id.*

[64] Alec MacGillis, *How Dollar Stores Became Magnets for Crime and Killing, Discount chains are thriving – while fostering violence and neglect in poor communities*, ProPublica (Jun. 29, 2020, 6:00 a.m.-EDT), https://www.propublica.org/article/how-dollar-stores-became-magnets-for-crime-and-killing.

[65] *Id.*

[66] *Id.*

[67] *Id.*

Michigan; January 23, 2022 in Detroit, Michigan; February 21, 2022 in Kinston North Carolina; February 22, 2022 in Lima, Ohio; September 20, 2022 in Calhoun, Georgia, October 19, 2022 in Hampton, Virginia; November 20, 2022 in Baton Rouge, Louisiana, and on other dates.[68]

50.     Dollar General employees have also been placed in traumatic situations due to these events. For example, in August 2017, the manager of a Dollar General in Baltimore was shot and killed as he was closing the store.[69] On February 18, 2018, masked robbers tied up two Dollar General employees during a gunpoint robbery in Queens, New York. In the District Court of Dallas County Texas, former Dollar General manager Labresha King brought a negligence and wrongful termination suit against Dollar General after experiencing four robberies, being held at gunpoint numerous times, and witnessing her coworker die in her arms during an armed robbery.[70]

51.     In November 2018, Robert Woods was training a new employee at a Dollar General store in St. Louis when an armed robber entered and fired several shots. One of the bullets hit and

---

[68] *Trotwood Dollar General employee shot in head, vehicle possibly involved found in Dayton,* WHIOTV (Oct. 16, 2020), https://www.whio.com/news/local/dollar-general-employee-shot-head-possible-vehicle-involved-found-dayton/STAIOEWPKRE6RHRIIEYKWQKNWE/; *Man arrested in Kinston Dollar General Robbery,* WITN (Feb. 23, 2022), https://www.witn.com/2022/02/23/kinston-dollar-general-robbed/; *Lima woman reportedly admits to dollar store robbery,* LIMAOHIO.COM (Feb. 24, 2022), https://www.limaohio.com/archive/2022/02/24/lima-woman-reportedly-admits-to-dollar-store-robbery/; *Calhoun Police Investigating Robbery at Dollar General*, THE GORDON GAZETTE (Sept. 20, 2022), https://www.wrganews.com/2022/09/20/calhoun-police-investigating-robbery-at-dollar-general/; Courtney Ingalls, *Police investigate armed robbery at Dollar General in Hampton,* WAVY.com (last updated Oct. 20, 2022, 6:15 p.m.-EDT), https://www.wavy.com/news/local-news/hampton/police-investigate-armed-robbery-at-dollar-general-in-hampton/; Sarah Lawrence, *Police searching for suspect in armed robbery of Dollar General*, WBRZ 2 (Nov. 23, 2022, 11:39 a.m.), https://www.wbrz.com/news/police-searching-for-suspect-in-armed-robbery-of-dollar-general/; Sharon Myers, *Thomasville Dollar General robbed for third time in two months*, THE DISPATCH (Jan. 23, 2023, 6:00 p.m.), https://www.the-dispatch.com/story/news/2023/01/23/thomasville-dollar-general-robbed-for-third-time-in-two-months-davidson-county-nc/69833038007/.
[69] *See supra* note 64.
[70] CeFaan Kim, *Masked robbers tie up workers in Queens dollar store robbery,* Eyewitness News, (Feb. 25, 2018), https://abc7ny.com/queens-dollar-store-robbery-in-general/3139633/; Complaint, *King v. Dollar General Corp.,* No. 3:180-cv-03414-G, (N.D. Tex. 2018), ECF No. 1.

20

killed Woods. After Wood's body was removed from the aisle where he was killed, Dollar General remained opened, and his co-workers were forced to continue through the shift.[71]

52.     In 2022, Keisha Brown was working as an assistant general manager at Dollar General in South Carolina, when a man came up to the register and slipped her a note that said, "[g]ive me everything in your register. I have a gun and will shoot you." Since her daughter had already lost her father to gun violence, Brown felt shad had to do everything in her power to keep herself and others alive through the robbery. So, she empties the register, locked up the whole store, and called 911 to report the incident. When Brown finally got a hold of the District Manager, she was asked two questions: (i) "[i]s everybody okay?" and (ii) "[w]hat are we going to do about re-opening the store?"[72]

53.     In August 2022, dollar stores in the United States were robbed at gunpoint most days of the month. As illustrated in the image below published by *More Perfect Union*, most of these robberies took place at Dollar Generals:[73]

---

[71] Paula Pecorella, *DOLLAR STORES ARE BEING ROBBED AT GUNPOINT MORE DAYS THAN NOT,* MORE PERFECT UNION, (Sept. 7, 2022), https://perfectunion.us/dollar-stores-are-being-robbed-at-gunpoint-more-days-than-not/; Leticia Miranda, *Dollar General is thriving. But workers say they pay the* price, NBC NEWS, (May 7, 2020), https://www.nbcnews.com/business/business-news/dollar-general-thriving-workers-say-they-pay-price-n1137096.
[72] *Id*.
[73] *Id.*



54.     Also in August 2022, the following robberies occurred: (i) in Texas, a Dollar General clerk was pepper-sprayed by one person, then thrown to the floor by another during a robbery; (ii) in Ohio, a man locked a Dollar General worker in a bear hug and held a screwdriver to her neck until her coworkers intervened; and (iii) in Virginia, an assailant robbed a Dollar General store, then shot a sheriff's deputy before fleeing the scene.

55.     Recently, a Dollar General clerk shot and killed an armed robber in self defense a Dollar General store in Louisiana. The clerk told authorities that it was the sixth attempted armed robbery at that Louisiana location since August, including four successful robberies and that he was afraid the robber was going to kill him.[74]

---

[74] Dominick Reuter, *A Dollar General clerk is charged with manslaughter after police say he shot and killed an armed robber. The clerk said it was the 6th attempted armed robbery at the store since August*, BUSINESS INSIDER, (Jan. 4, 2023), https://www.businessinsider.com/dollar-general-employee-charged-after-attempted-armed-robber-shot-killed-2023-1; *See also* Taya Glenn, *Dollar General robbed for the third time in Thomasville, WFMY News*, (Jan. 23, 2023), https://www.wfmynews2.com/article/news/crime/dollar-general-in-thomasville-robbed-three-

56. Moreover, Dollar General employees are constantly placed in harms' way and there is an extreme likelihood they will be exposed to armed robberies during their employment. Brian Flannery, a former divisional loss prevention director at Dollar General who oversaw security at thousands of Dollar General stores said, "Every night I was just waiting for there to be a phone call that said, 'Hey we've lost somebody,' . . . It wasn't a matter [of] if you were going to have a bad robbery. **It was a matter of when.**"[75]

## C. Despite Numerous Complaints, Individual Defendants Remain Unresponsive

57. Employees have persistently complained to Dollar General for assistance with staffing, store organization and overtime pay. Recently, in April, a Dollar General Manager named Mary Gundel was fired after she posted videos on the popular video platform, TikTok about staffing shortages and difficult hours.[76] In her videos, Gundel has exposed Dollar General's unsafe working conditions and staffing concerns. Gundel has created the hashtag #PutInaTicket to mock the Company's poor bureaucratic response to workers' complaints.[77]

58. Fed up with their unfair treatment and frustrated by the Company's persistent ignorance of their grievances, Gundel has organized protests against Dollar General, store walkouts, radio discussions and is continuously sharing the complaints of Dollar General employees nationwide on her social media platform.[78]

---

times-police-searching-for-suspect/83-8318288b-7da6-4962-bfc2-5ac0676b9c53 (Thomasville Dollar General Robbed for third time in two months).

[75] *See, supra* note 60.

[76] Melissa Eck, *Dollar General manager fired for posting TikToks of staffing shortages, difficult hours,* FOX 56 (Apr. 19, 2022), https://fox56.com/news/offbeat/dollar-general-manager-fired-for-posting-tiktoks-of-staffing-shortages-difficult-hours-department-of-labor-osha-occupational-safety-and-health-administration-blocked-electrical-panels-obstructed-exists-workplace-injury-put-in-a-ticket-uber-lyft-walkout ("Gundel Article").

[77] *Id.*

[78] Mary Gundel (@marygundel), TikTok, https://www.tiktok.com/@marygundel (last accessed Jan. 12, 2023).

23

59.     Gundel repeatedly emphasizes that Dollar General employees "have the legal right to demand better at work" and often encourages Dollar General employees to file safety complaints with OSHA, participate in strikes and or marches, and raise employee safety concerns with the Company as well as on her own platform.[79]

60.     Dollar General's Board ███████████ #PutInATicket movement and has explicitly chosen inaction. Within Stockholder's production is DG_B&R_00000573 which

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████[80]

61.     ████████████████████████████████████

███████ The ███ goes into detail about ███████████████, including ███████

████████████████████████████████████████

████████████████



[79] *Id.*
[80] DG_B&R_00000573 at '613.

██████████████████[81]

62.     In response to ████████████████, Dollar General states, ████████████████████
██████████████████████[82]███████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████[83] Yet, OSHA fines and employee complaints continue to pile up like the fire-hazard boxes outside of nearly every Dollar General store. Dollar General remains oblivious to its problems.

63.     With respect to the #PutInATicket movement, ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████ *See* DG_B&R_00001464 at '615.

64.     Here, ██████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████ *Id.*

---

[81] *Id.* at '614 (emphasis not added).
[82] *Id.* at '615.
[83] *Id.* at '633-34.
[84] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████

**D.** **Individual Defendants Applied Cosmetic Changes That Did Little To Address Workplace Safety**

65.     Dollar General's Board applied cosmetic changes to its severe workplace safety concerns solely to assure investors that their investments were secure and Dollar General's profitability continued to grow. What the Company truly did, however, was apply a lipstick on a pig in a futile effort to disguise its fundamental failings.

66.     On ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████[85]



67.     At the same ██████████████████████████████████

██████████████████████████████████████████████████ *See*

DG_B&R_00001680. ████████████████████████████████████

████████████

---

[85] *Id.* at '280.



68.     On ███████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████[86]

69.     Similarly, ██████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████ *Id.* at '119.

70.     On ███████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████ *See* DG_B&R_00002537. ██████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

---

[86] *Id.* at '324; *see also* DG_B&R_00002465 at '486 ████████████████

████



[redacted][87]

71. Further, the [redacted] *Id.* at '577.

72. On [redacted][88]

---

[87] *Id.* at '570.
[88] *Id.* at '965.

73.     For four consecutive years and on numerous accounts, ██████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████ *See* DG_B&R_0000262 at '280; DG_B&R_00002537 at '570; and DG_B&R_00000926 at' 965. Nonetheless, ████████████████████ ██████████████████████████████ willfully disregarded the Company's pervasive noncompliance issues with OSHA and instead of remedying the issues, simply paid for the violation with the Company's and shareholders' money.

74.     On ██████████████████████████████████████████████ ████████████████████████████████████████████████████████ *See* DG_B&R_00001060. ██████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████ *Id.* at '098. With blatant language once again, the ████████████████████████████████████████████████ ████████████████████

75.     On ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ *See* DG_B&R_00001175. At the meeting, ██████████████ ████████████████████████████████████████████████████████ *See* DG_B&R_00001464. ██████████████████████████████████████



██████████████████████[89]

- ██████ ██████████████████████████████████
  ██ █████████████████████████████████████
  ███ █████████████████████████████████
  ████ ███████████████████████████████
  ██ ████████████████████████████████████
  ████ ███████████████████████████

76.     Here, ████████████████████████████████████████
████████████████████████████████ To compound this explicit
knowledge, ████████████████████████████████████████
████████████████████████████████████████████████
█████████████ *See* DG_B&R_00001464 at '477. ████████████
████████████████████████████████████████████████
████████████████ *Id.* A wholly unacceptable number.

77.     On ███████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████ *See*
DG_B&R_00000087. ████████████████████████████████
████████████████████████ *See* DG_B&R_0000001.
████████████████████████████████████████████████

---

[89] *See* DG_B&R_00001464 at '470.

██████████████████████████[90] ████████████████████████████████████

█████████████████████████████████████████████████ *Id.* at '022. Next,

████████████████████████████████████████████████████ *Id.* at

'033.

78.     The ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ *Id.* ████████████████████████

██████████████████████ *Id.* Further, █████████████████████████

████████████████████████████████████████████████████████

███████████████████ *See* DG_B&R_00000306 at '319.

79.     In short, the window dressings instituted by Dollar General did nothing to reduce the number of OSHA violations. Worse, ████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████

80.     On both ██████████████ and ██████████ ██████████████████

████████████████████████████████████████████████████████ *See*

DG_B&R_00000306; *See* DG_B&R_0000001. ████████████████████████

████████████████████████████████████████████████████████

███████████████████ *See* DG_B&R_0000001 at '034; DG_B&R_00000306 at '330. ████

████████████████████████████████████████████████████████

---

90 ███████████████████████████████████████████████████████████

███████████████ *See* DG_B&R_00000001 at '033.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at '330;

DG_B&R_00000087. ████████████████████████████████████

████████████████████████████████ *Id.* █████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████ *Id.*

81.     After receiving notice of ████████████████████████████████

████████████████████████████████ the Director Defendants applied a series of window

dressing changes, which amounted to no meaningful corporate reform. To date, the Director

Defendants are still sleeping at the switch while the Company, and the Director Defendants

themselves, continue to reap its lucrative benefits.

82.     On ███████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ *See* DG_B&R_00001009. ████████████████

██████████████████████████████████████████████████████

*Id.* at '011. ████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████ *Id.* ████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████ *Id.*

83.     On ███████████████████████████████████████████



*See* DG_B&R_00000133.

*Id.* at '160.

*Id.*

[91]

84.     Instead of addressing the issue of workplace safety head-on, Dollar General, on numerous accounts, chose to sweep its hazardous employee safety violations under the rug, which ultimately has created one, gigantic problem.

85.     On                                                                                                    *See* DG_B&R_00000204.

---

[91] *See* DG_B&R_00001233 at '1241.



*Id.* at '228.

[REDACTED]⁹² Here,

86.     At [REDACTED] *See* DG_B&R_00000349.

*Id.* at '373.

*Id.*

87.     On [REDACTED]

*See* DG_B&R_00000087.

88.     Rather [REDACTED]

█████████ *Id.* at '125. The minor changes implemented by the Company during this time, were

to no avail. For example, ██████████████████████████████████████████████

█████████████████ *See* DG_B&R_00000001. ████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████ *Id.* at '032. █████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ *See* DG_B&R_00000306 at

'328. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████ *Id.*

89.      To make matters worse, ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *See*

DG_B&R_00000001 at '034. For example, █████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ *Id.*; *see*

*also* DG_B&R_00000349 at '373. Once again, the Company turned a blind eye to its enormous

OSHA problems.

90.      On ███████████████████████████████████████████████████

██████████████████████████████████ *See* DG_B&R_00000464. ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* at '520. █████████

35

█████████████████████████████████████[93]



91.     Each ████████████████████████████████

████████████████████████████████████████

██████████████ *Id.* Also, ██████████████████

███████████████████████████ *Id.* at '523.████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████[94]

    ████████████████████████

    ████████████████████████

92.     On ███████████████████████████████

████████████████████████████████████████

---

[93] DG_B&R_00000464 at '521.
[94] *Id.* at '523.



*See* DG_B&R_00000037. ███████

███████
███████
███████
███████

███ *Id.* at '063. ███████

███████
███████

███ *Id.* at '070.

93.     The ███████ really was the icing on the cake: ███████ ███████ *Id.* After six consistent years of ███████ corporate action should have been taken that exceeded the realms ███████ ███

94.     On ███████ *See* DG_B&R_00000712. ███████

███████

███████ *Id.* at '633. ███

███████
███████

███ *Id.* at '664. Similarly, ███████

███████

████████████████████████████████████████████ *Id.* at '680.

95.      Also at ███████████████████████████████████████████

███████████████████████████████████████████████████████████

*See* DG_B&R_00000573 at '608. █████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ *Id.* at '633; DG_B&R_0000001 at '022.

96.      Dollar General continues to suffer reputational harm while directors are still sleeping at the switch six years after the issue was first brought to their attention. Not only is the Board ignoring the Company's reputational harm, but Dollar General is bleeding money while the Board does nothing. For example, on the date the NBC article was released that exposed Dollar General's workplace safety problems, Dollar General's stock fell $1.65 and closed at $173.60 on May 7, 2020. Similarly, on May 2, 2022, the date of Dollar General's national walk-out in protest of the Company's working conditions, Dollar General's stock fell $2.34 and closed at $236.17, wiping out more than $500 million of investors' and the Company's wealth.

## V.      DUTIES OF INDIVIDUAL DEFENDANTS

### A.      The Fiduciary Duties of Individual Defendants

97.      Each Individual Defendant, by virtue of his or her position as a director and/or officer, to the Company and to its stockholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Dollar General, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its stockholders that Individual

38

Defendants were aware or should have been aware posed a risk of serious injury to the Company.

98.     Each director and officer of the Company owed, and owes, to Dollar General and its shareholders the fiduciary duties of due care, loyalty and good faith in the administration of the affairs of the Company and in the use and preservation of its property and assets. The duty of care requires informed, deliberative decision-making based on all material information reasonably available. The duty of loyalty requires acting (including deciding not to act) on a disinterested and independent basis, in good faith, with an honest belief that the action is in the best interests of the Company and its shareholders.

99.     Each director and officer of the Company is required to act in furtherance of the best interests of the Company and its shareholders to benefit all of the Company's shareholders equally, and not in furtherance of their personal interest or benefit.

100.    Individual Defendants, because of their positions of control and authority as directors and/or officers of Dollar General, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

101.    At all times relevant hereto, each Individual Defendant was the agent of each of the other Individual Defendants, and of Dollar General and was at all times acting within the course and scope of such agency. Each of the Individual Defendants' conduct – who were officers and directors of the Company – was ratified by the remaining Individual Defendants who collectively comprised the Company's board of directors at all relevant times herein.

102.    To discharge their duties, each Individual Defendant was required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, Individual Defendants were required to, among other things:

39

a) exercise good faith to ensure that the affairs of Dollar General were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

b) exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and in compliance with all applicable federal and state laws, rules, regulations, and requirements;

c) when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence;

d) remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

e) establish and maintain systematic and accurate records and reports of the business and internal affairs of the Company and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

f) exercise reasonable control and supervision over the Company's operations conducted by the Company's officers and employees and any operations that the Company was required to maintain by law; and

g) refrain from wasting the Company's assets or otherwise unduly benefiting themselves and other Company insiders at the expense of the Company.

**B. Business Code of Ethics**

103.     In addition to their fiduciary duties, Dollar General's Board of Directors are required to abide by its Corporate Governance Guidelines (the "Guidelines"). The Guidelines provide, in relevant part:[95]

### I.     Role and Responsibilities of the Board

The basic role of the Board is to protect shareholder interests by understanding and overseeing our long-term, central strategies; understanding the issues, forces and risks that define our business; overseeing management's performance; and promoting law-abiding and ethical behavior by our employees. To fulfill this role, ***directors are expected to exercise their business judgment in good faith and to act with loyalty and in what they each reasonably believe to be the best interests of Dollar General and its shareholders, to regularly attend Board and applicable committee meetings, and to review in advance of meetings the materials provided by management***.

(f)     ***Confidentiality and Compliance with Policies and Procedures***. The proceedings and deliberations of the Board and its committees are confidential. Each director shall maintain the confidentiality of information received in connection with his or her service as a director. In addition, each director is responsible for complying with all Company policies and procedures applicable to members of the Board, ***including without limitation the Code of Business Conduct and Ethics (including its conflicts of interest provisions)***, the Insider Trading Policy and related procedures, the Disclosure Policy, and the policies and procedures applicable to related party transactions as set forth in the Delegation of Authority Policy.

104.     The following are the relevant qualifications for all Directors:[96]

### II.     Board Committee Member Selection and Qualifications

(i)     ***Integrity and Accountability***. ***Directors should demonstrate sound ethical standards and integrity and be willing to act on and be accountable for their boardroom decisions.***

(ii)     ***Informed Judgment.*** Directors should have the ability to provide wise, thoughtful counsel on a broad range of issues and should possess high intelligence and wisdom and apply those qualities in decision-making. Their

---

[95] *See Dollar General Corporate Governance Guidelines*, https://investor.dollargeneral.com/dow nload/companies/dollargeneral/CorporateGovernance/Governance%20Principles-08.23.22.pdf (last accessed Feb. 10, 2022).

[96] *See, supra* note 95 at p. 4.

background and experience should add value to the skill set of the Board as a whole.

105.    The Guidelines also provide the following section on Corporate Ethics and

Controls:[97]

**V.    Corporate Ethics and Controls**

*We are committed to conducting business ethically and legally. Toward that end, the Board shall exercise reasonable oversight over the implementation and effectiveness of our compliance and ethics program* and ensure that an internal audit function is maintained.

(a) <u>Internal Audit.</u> We will maintain an internal audit function which shall report on substantive audit, internal control and enterprise risk management matters directly to the Audit Committee.

**(b)** ***<u>Code of Ethics.</u> An appropriate "tone at the top" is necessary to ensure that all Company employees remain committed to integrity. Accordingly, all directors (to the extent applicable) and employees are expected to perform their duties for Dollar General ethically and legally and to adhere, and encourage others to adhere, to our Code of Business Conduct and Ethics.***

**(c)** <u>**Compliance Program.**</u> We will maintain a legal compliance program designed to communicate a culture of compliance and to reside the risk that our directors, employees, agents or vendors will violate the laws, rules, regulations or Company policies applicable to them.

**C.  Audit Committee Charter**

106.    In addition to the Corporate Governance Guidelines, the Company's Audit

Committee Charter provides obligations to that committee's members. The Audit Committee's

primary purposes are to:[98]

- Assist Board oversight of (1) the integrity of the Company's financial statements; (2) the Company's compliance with legal and regulatory requirements; (3) the independent auditor's qualifications and independence; and (4) the performance of the Company's internal audit function and independent auditors; and

- Prepare the report required by the Securities and Exchange Commission for

---

[97] *See, supra* note 95 at p. 7-8.
[98] *See, supra* note 9 at p. 1-2.

42

inclusion in the annual proxy statement.

107.	The following are the relevant obligations for those committee members listed in the Audit Committee Charter:[99]

### *Ethical and Legal Compliance*

17.	Oversee such portions of the Code of Business Conduct and Ethics as the Board of Directors may designate from time to time;

19.	Discuss with the Company's General Counsel legal matters that may have a material impact on the financial statements or the Company's compliance policies; and

20.	***Receive reports on the activities of the Company's Compliance Committee and on the content, operation and effectiveness of the legal compliance program.***

### D. Compensation Committee Charter

108.	In addition to the Corporate Governance Guidelines and Audit Committee Charter, the Company's Compensation Committee Charter provides obligations to that committee's members. The Compensation Committee's include the following Responsibilities:[100]

### V.	Responsibilities

1.	CEO Performance. The Committee shall ***review and approve corporate goals and objectives*** relevant to CEO compensation and shall evaluate the CEO's performance in light of these goals and objectives.

2.	CEO Compensation. The Committee shall determine and approve the CEO's compensation level (including salary, bonus, incentive and equity) or changes to such level based on the evaluation of the CEO's performance mentioned above, the compensation principles set forth on Exhibit A, and any other factors the Committee deems relevant, and the independent directors of the Board shall have the opportunity to ratify such decisions. In determining the long-term incentive component of CEO compensation, the ***Committee may also consider the Company's performance***…

---

[99] *See, supra* note 9 at p. 5.
[100]	*See Dollar General Corporation Compensation Committee Charter*, https://investor.dollargeneral.com/download/companies/dollargeneral/Committee%20Charters/Charter--Compensation%20Committee%20(08-25-2021%20Final).pdf (last accessed Feb. 9, 2022).

43

3.    Director Compensation. The Committee shall review periodically, and recommend to the Board any changes to, the form and amount of compensation for directors in light of the following principles: (a) compensation should fairly pay directors for their time and effort, as evidenced at least in part through competitive benchmarking; and (b) ***compensation should align directors' interests with the long-term interests of shareholders by including some form of equity*** . . .

4.    Senior Officer Performance. The Committee shall oversee the evaluations of the senior officers.

5.    Senior Officer Compensation. The Committee, after consultation with and upon recommendation of the CEO, shall determine for senior officers (a) annual compensation, including salary, bonus, incentives and equity, in accordance with the principles on Exhibit A; and (b) any employment contract, severance/termination agreement, retirement arrangement, change in control arrangement, and any special or supplemental benefit arrangement that differs in a material way from the Company's form contracts, agreements and arrangements, including any such arrangements for the CEO.

6.    Compensation Principles and Philosophy/Risk Assessment. When appropriate, the Committee shall recommend to the non-management Board members changes to the CEO and senior officer compensation principles and periodically review the general employee compensation philosophy to ensure it is competitive within the market and ***closely related to personal and corporate performance* . . . . *The Committee shall consider how the Company's compensation arrangements may affect risk-taking behavior in the Company's operations and the extent to which risks arising from such overall compensation policies may have a material adverse effect on the Company.***

109.    Exhibit A of the Compensation Committee's Charter provides the following Compensation Principles:[101]

The goals of the Company's executive compensation strategy are to attract, retain and motivate persons with superior ability, to reward outstanding performance, and to align the long-term interests of our senior officers with those of our shareholders. The Company's compensation principles for such persons include, but are not limited to, the following:

- ***Compensation arrangements shall emphasize pay for performance and encourage retention of those senior officers who enhance the Company's performance.***

---

[101] See, supra note 100 at p. 5.

- Compensation arrangements shall maintain an appropriate balance between base salary and long-term annual incentive compensation.

## VI.    DAMAGES TO THE COMPANY

110.    As a result of the Individual Defendants' improprieties, Dollar General engaged in a systemic unlawful pattern and practice of permitting hazardous working conditions and crime. Dollar General's conduct violated applicable federal and state laws and regulations and operated to the detriment of the Company and its shareholders. State and federal governmental enforcement agencies such as OSHA have the authority to impose severe monetary penalties and other forms of sanctions should they continue to find that Dollar General's conduct violated the laws with respect to which they have enforcement powers.

111.    Further, regulations promulgated by OSHA make clear that a company is liable for acts of unsafe workplace conditions by its employees when it knows, or should have known, about the misconduct, unless the company shows that it took immediate and appropriate corrective action. Associated enforcement guidance and judicial rulings confirm that companies must undertake a thorough investigation and impose appropriate remedial measures when they learn of unsafe working conditions. Otherwise, they are liable for failing to remedy these unsafe work environments.

112.    As a direct and proximate result of the Individual Defendants' actions, Dollar General has expended, and will continue to expend, significant sums of money. Such expenditures include, but are not limited to:

a) costs incurred from paying additional OSHA penalties for new violations, willful violations and repeat violations within Dollar General stores;

b) costs incurred from implementing any corrective and/or remedial measures ordered by state and federal authorities or agreed to by virtue of a settlement or a compromise;

c) costs incurred from defending and settling potential regulatory and civil actions against

45

the Company; and

d) costs incurred from compensation and benefits paid to the Individual Defendants who have breached their fiduciary duties to Dollar General.

113. As a result of these unsafe working conditions surrounding Dollar General, the Company has lost and will continue to lose employees, which will further exacerbate harm to Dollar General.

114. Finally, Dollar General's business, goodwill, and reputation have been, and will continue to be, severely damaged by the Individual Defendants' decision to allow and/or failure to prevent the Company's systemic violation of state and federal laws.

## VII.  DERIVATIVE ALLEGATIONS

115. Plaintiff brings this action derivatively in the right and for the benefit of Dollar General to redress injuries suffered, and to be suffered, by Dollar General and its employees and a direct result of the Individual Defendants' breaches of fiduciary duty, waste of corporate assets, and unjust enrichment. Dollar General is named as a nominal defendant solely in its derivative capacity. This is now a collusive action to confer jurisdiction on this Court that it would not otherwise have.

116. Plaintiff will adequately and fairly represent the interests of Dollar General in enforcing and prosecuting its rights.

117. Plaintiff is a stockholder of Dollar General at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Dollar General stockholder.

118. The current Dollar General Board consists of the following ten individuals: Defendants Jeffery C. Owen, Michael M. Calbert, Warren Bryant, Ana Chadwick, Patricia Fili-Krushel, Timothy McGuire, William C. Rhodes III, Debra A. Sandler, Ralph Santana and Todd

Vasos.

## VIII.   DEMAND FUTILITY ALLEGATIONS

119.     Plaintiff has not made a demand on Dollar General's Board to investigate the wrongdoing alleged herein. Such a demand would be a futile and wasteful act for the reasons set forth below. Under such circumstances, demand is excused.

120.     First, the Individual Defendants had an obligation to ensure that Dollar General complied with the law that they shirked. Faced with knowledge that Dollar General was engaging in a systematic and widespread practice of hazardous and unsafe working conditions, the Individual Defendants caused or allowed the Company to continue to misconduct and place Dollar General employees in harms' way. Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take any meaningful action to remedy the resultant harm.

121.     Second, the Individual Defendants unheeded the very responsibilities that Dollar General's own Business Code of Ethics imposed on them. Specifically, Dollar General's "Code of Business Conduct and Ethics" expressly states that it "ensure[s] a safe workplace by following all-safety related signs and instructions and by taking steps to prevent accidents." The Business Code of Ethics explicitly acknowledges that "safety is very important."[102]  As noted on page one of the "Code of Business Conduct and Ethics," this code applies to "all employees, officers and Board members."[103]

122.     Notwithstanding these very clear provisions, there is little doubt that the Board members deserted their responsibility to uphold them in failing to take any meaningful action to

---

[102] *See supra* note 11 at p. 4.
[103] *See supra* note 12 at p. 1.

remedy the harm Dollar General suffered as a result of the purposeful breach of its fiduciary duties. This harm was not only suffered by the Company, but also by its employees – some of which who have lost their lives due to Dollar General's willful disregard for employee safety. For instance, on August 10, 2017, a manager of a Dollar General store in Baltimore was shot and killed during a robbery, which then escalated to murder.[104]

123.     Dollar General has placed its profits before its employees' safety within the four corners of its stores. The Board was repeatedly confronted with information that should have put its members on notice that Dollar General was subjecting its employees to cruel and dangerous working conditions.[105]

124.     Nonetheless, Dollar General Individual Defendants receive lavish pay and compensation above market rates all while the typical Dollar General employee is compensated only $5,000 more than the U.S. poverty threshold. In fact, Todd Vasos makes nearly 1000x the salary of a typical employee. A typical Dollar General employee earns $17,733 a year, which is $16,601,1410 less than Defendant Vasos' compensation for 2021.[106]

125.     Executives and Officers at Dollar General are compensated above market rates. An analysis of financial filings revealed that compensation for Dollar General's 5-member executive team was a lavish 41% and 13% higher than rival discounters Five Below and Family Dollar, respectively.[107] Research from Harvard's Shift Project and the Economic Policy Institute

---

[104] *Surveillance Video In Murder Of Dollar General Manager Released*, CBS Baltimore (Aug. 10, 2017, 6:00 p.m.), https://www.cbsnews.com/baltimore/news/dollar-general-murder/.

[105] *See*, *supra* note 6 at '160, ███████████████████████████████████

███████████████████████████████████████████████████████████████

[106] Eric Gardner, *Dollar General Is Paying Industry-Low Wages While Lavishing Executives*, More Perfect Union (May 27, 2022), https://perfectunion.us/dollar-general-is-paying-industry-low-wages-while-lavishing-executives/.

[107] *See, supra* note 99.

conducted in April 2022 suggests that 92% of its workforce earns less than $15 an hour, the worse rate of the 66 different large service sector employers surveyed. This confirmed findings from UBS in 2020, which estimated that Dollar General pays the lowest hourly rate of all 25 retailers it surveyed. The Economic Policy Institute and Shift Project created the following chart:[108]



126.    Throughout the pandemic, Dollar General has prioritized redistributing excess profits to shareholders rather than workers. In 2021, the Company spent $2.5 billion on stock buybacks, while rewarding the Company's roughly 160,000 frontline workers with about $1,000 each on average in COVID-related bonuses. The *More Perfect Union* published the following chart:[109]

---

[108] *See, supra* note 99; *see also* Allana Akhtar, "A UBS report says Dollar General pays workers the least among 25 major retailers, even as the discount chain thrives amid the pandemic," Insider (Oct. 22, 2020, 3:19 p.m.), https://www.businessinsider.com/dollar-general-pays-employees-less-than-walmart-target-ubs-report-2020-10.
[109] *See, supra* note 99.



**Dollar General's COVID bonuses, Dividends and Stock Repurchases**

Source: Dollar General Financial Documents

Legend: Frontline Covid | Common Dividends | Stock Repurchases

127.    In short, Individual Defendants are compensated lavishly all while the Company's employees are earning about $15 an hour, while constantly placing themselves in hazardous working conditions, including the likelihood that an armed robbery will occur at their store.

128.    At all relevant times, Defendant Vasos was a non-independent director. Defendant Vasos was Chief Executive Officer of Dollar General for the majority of the relevant period and shareholder of Dollar General. As of April 1, 2022, Defendant Vasos owns 424,771 shares of Dollar General stock and his annual compensation for 2021 was $16,618,873.[110] ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As an employee, Vasos derives substantial income from his employment and stock holdings with Dollar General, thus he could not disinterestedly consider a demand for action that might require him to sue the directors and/or fellow members of management with whom he works on a day-to-day basis.

129.    Defendant Owen is currently Dollar General's Chief Executive Officer and was not therefore independent. Owens began serving as Chief Executive Officer in 2022 when Dollar

---

[110] *See*, *supra* note 16.

General was notoriously and repeatedly called out by the U.S. Department of Labor for its grossly inadequate measure to protect its employees. Prior to his appointment as Chief Executive Officer, he served as Chief Operating Officer from August 2019 to November 2022 and as Executive Vice President, Store Operations, from June 2015 until August 2019. Defendant Owen began his employment at Dollar General in December 1982. ████████████████████████████

████████████████████████████████████████████ As an employee, Owen derives substantial income from his employment and stock holdings with Dollar General, thus he could not disinterestedly consider a demand for action that might require him to sue the directors and/or fellow members of management with whom he works on a day-to-day basis.

130.     Defendant Calbert has served as Director and Chairman of the Board at all relevant times. Defendant Calbert was only absent from one Audit Committee in 2022. ████████████████████

████████████████████████████████████████████████ As both Chairman of the Board and Chair of the Nominating and Governance Committee, Defendant Calbert  cannot disinterestedly consider a demand for action that might require him to sue the directors and/or fellow members of management with whom he equally faces a substantial likelihood of liability for the misconduct described herein. As of April 1, 2022, Defendant Calbert owned 110,582 shares of Dollar General stock.

131.     Defendants Rhodes, Bryant, McGuire and Santana ████████████████████

████████████████████████████████████████████████████████

████████████ Each Director Defendant was ████████████████████████████

████████████████████████████████████████████████████████

████████ The same is true for ████████████████████████████████

████████████████████████████████████████████████

132.     Defendant Wenkoff has served as Dollar General's Executive Vice President and Chief Information Officer at all relevant times. As an employee, Wenkoff derives substantial income from his employment and stock holdings with Dollar General, thus he could not disinterestedly consider a demand for action that might require him to sue the directors and/or fellow members of management with whom he works on a day-to-day basis. Defendant Wenkoff was ███████████████████████████████████████████████████████████ ██████████████████ He sat at the wheel alongside the Director Defendants knowing that inaction would continue and thus contributed, condoned, and/or allowed Dollar General to engage in the unlawful conduct described herein.

133.     Defendant Garratt has served as served as President and Chief Financial Officer since 2022. Prior to that, he held valuable roles within the Company at all relevant times. As an employee throughout the relevant period, Garratt derives substantial income from his employment and stock holdings with Dollar General, thus he could not disinterestedly consider a demand for action that might require him to sue the directors and/or fellow members of management with whom he works on a day-to-day basis. Defendant Garratt was █████████████████████████ ████████████████████████████████████████████████

134.     Officer Defendants Elliot and Taylor were employed by the Company at all relevant times. As employees during the relevant period, Elliot and Taylor derive substantial income  from their employment and stock holdings with Dollar General, thus they could not disinterestedly consider a demand for action that might require them to sue the directors and/or fellow members of management with whom they work on a daily basis with. █████████████████████████ ████████████████████████████████████████████████████████████ ██████

52

135.     Officer Sunderland served as Executive Vice President and Senior Vice President of Store Operations at all relevant times. As Executive Vice President and Senior Vice President of Store Operations, Officer Sunderland's daily activities heavily coincide with the allegations mentioned in this Complaint, such as the repeated OSHA fine involving cluttered aisles and other fire hazards. Since Officer Sunderland's role significantly overlaps with the Company's failures to rectify its workplace safety issues, Officer Sunderland could not disinterestedly consider a demand to sue the directors and/or fellow officers because he would likely implicate himself in the process.

136.     Each Officer Defendant served together as officers at Dollar General during the relevant period. As such, Each Officer Defendant was acutely aware of the Company's noncompliance with OSHA and exorbitantly high crime rates. To hold one Officer liable for his inaction would essentially implicate all Officers on the same basis. Thus, each Officer Defendant could not disinterestedly consider a demand for action that might require him to sue his fellow officers.

137.     The Nominating, Governance and Corporate Responsibility Committee (Defendants Calbert, Sandler, Santana and Fili-Krushel) are disabled from objectively considering pre-suit demand to bring these claims because, as members of the Nominating, Governance and Corporate Responsibility Committee during the relevant period, they face a substantial likelihood of liability for wrongdoing. Dollar General's Corporate Governance Guidelines expressly state, "each director is responsible for complying with all Company policies and procedures applicable to members of the Board, including without limitation the Code of Business Conduct and Ethics . . ."[111] Nonetheless, the Nominating, Governance and Corporate Responsibility Committee had

---

[111] *See*, *supra* note 11.

53

oversight responsibilities for the Company's compliance with Company policies and procedures, and was charged with overseeing such compliance. It was their decision not to take timely action to put the Company in compliance with its own procedures that placed safety as a top concern. Timely action by the Nominating, Governance and Corporate Responsibility Committee would have prevented, or at least minimized, the damages caused to Dollar General and its shareholders by the wrongdoing discussed herein.

138.     The Audit Committee Defendants (Defendants Chadwick, Rhodes, Sandler and Bryant) are also disabled from objectively considering pre-suit demand to bring these claims because, as members of the Audit Committee during the relevant period, they face a substantial likelihood of liability for wrongdoing. The Audit Committee's primary purposes is to "Assist Board oversight of . . . (2) the Company's compliance with legal and regulatory requirements."[112] It was their decision as Audit Committee members not to take timely action to put Company in compliance with its own procedures that placed safety as a top concern. Timely action by the Audit Committee would have prevented, or at least minimized, the damages caused to Dollar General and its shareholders by the wrongdoing discussed herein.

139.     The Compensation Committee Defendants (Bryant, McGuire and Fili-Krushel) are disabled from objectively considering pre-suit demand to bring these claims because, as members of the Compensation Committee during the relevant period, they face a substantial likelihood of liability for wrongdoing. The Compensation Committee had oversight responsibilities for the Company's internal control policies and procedures and was required to ensure that the Company was operating in accordance with its prescribed policies, procedures, and codes of conduct. It was their decision as Compensation Committee members not to take timely action to put Company in

---

[112] *See*, *supra* note 9.

compliance with its own procedures that placed safety as a top concern. Timely action by the Compensation Committee would have prevented, or at least minimized, the damages caused to Dollar General and its shareholders by the wrongdoing discussed herein.

140.     Pursuant to Dollar General Corporation's Compensation Committee Charter[113], the CEO's compensation must reflect corporate goals and objectives and his performance must be evaluated in light of these objectives. Dollar General is boasting safety as one of its top priorities. According to Dollar General's "Code of Business Conduct and Ethics," safety is very important. Dollar General's management pretends to "ensure a safe workplace by following all-safety related signs and instructions and by taking steps to prevent accidents."[114] For years, the CEO certainly did not consider safety as one of his top priorities contrary to Dollar General's own Code of Business Conduct and Ethics. He failed miserably at meeting –yet alone achieving—the objectives of this very code. However, his compensation cannot be deemed to have reflected corporate goals and objectives. For 2021, CEO Vasos' compensation was a whopping $16,618,873.[115]

141.     Dollar General has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants have not caused the Company to take action to recover for the Company the damages it has suffered and will suffer thereby.

142.     The Individual Defendants knew of the detrimental working conditions taking place at the Company. These violations were open and notorious and were either known to or recklessly disregarded, by the Individual Defendants. The Individual Defendants, however, took no action to stop or prevent the substantial damage caused to the Company and its shareholders by those

---

[113] *See, supra* note 100.
[114] *See*, *supra* note 11.
[115] *See*, *supra* note 14.

55

violations. The Individual Defendants were required to investigate and take action to prevent damage to Dollar General and its stockholders but failed to take timely action. Thus, the Individual Defendants would have refused to institute this action.

143. The acts complaint of herein are illegal, unsafe, and improper and constitute as breaches of fiduciary duties by the Individual Defendants and are, thus, incapable of ratification.

144. Publicly traded companies, such as Dollar General, typically carry Director & Officer liability insurance from which the Company could potentially recover some or all of its losses. However, such insurance typically contains an "insured vs. insured" disclaimer that would foreclose a recovery from the insurers in the event that Dollar General sues to recover its damages from the Board.

145. The Individual Defendants were aware of, but failed to investigate, red flags of illegal, unethical, or improper conduct and failed to take any timely action to prevent, or at least minimize, the damages caused.

146. The Individual Defendants herein, received, and continue to receive, substantial salaries, bonuses, payments, benefits, and other emoluments by virtue of their membership on the Board and their control of Dollar General. They have thus benefitted from the wrongs herein alleged and have engaged therein to preserve their positions of control and the perquisites thereof and are incapable of exercising independent objective judgement in deciding whether to bring this action.

147. The Individual Defendants' disregard of illegal and improper conduct, as embodied by their systematic failure to implement and maintain adequate internal controls sufficient to monitor and prevent the officers, directors, employees, and agents of the Company from violating or acting in contravention to applicable laws, rules and regulations, and the Company's Code of

56

Business Conduct and Ethics, constitutes breaches of their duties of good faith and loyalty such that they face a substantial likelihood of liability for their actions/inactions.

## IX.    CAUSES OF ACTION

### COUNT ONE

**Breach of Fiduciary Duty**
**(Against Individual Defendants)**

148.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

149.    The Individual Defendants owed and still owe Dollar General and its shareholders fiduciary duties. By reason of their fiduciary relationships, the Individual Defendants owed and owe Dollar General and its shareholders the highest obligations of loyalty and due care in the administration of the affairs of the Company, including, without limitation, the oversight of Dollar General compliance with and the duty to conduct good faith investigation into known violations of laws, regulations, and internal policies concerning workplace safety.

150.    The Individual Defendants violated and breached their fiduciary duties of loyalty and due care by allowing: (i) unsafe working conditions and repeatedly placing employees in harm's way for several years; and (ii) failing to exercise proper oversight and remedy Dollar General's high crime rates.

151.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Dollar General has sustained, and will continue to sustain, significant damages – both financial and to its talent, corporate image, and goodwill. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company for the damages resulting directly and proximately from their breaches of fiduciary duties.

152.    Plaintiff, on behalf of Dollar General, has no adequate remedy at law.

57

## COUNT TWO

### Breach of Fiduciary Duty
### (Against the Director Defendants)

153.　　Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

154.　　The Director Defendants owed and owe Dollar General fiduciary obligations. By reason of their fiduciary relationships, the Director Defendants specifically owed and owe Dollar General the highest obligation of loyalty, due care, good faith, fair dealing, and candor in the administration of the affairs of the Company, including, without limitation, the oversight of the Company's compliance with state and federal laws, rules, and regulations.

155.　　The Director Defendants also owed and owe Dollar General fiduciary duties imposed and defined by the federal laws, rules, regulations, and federal substantive corporate law, which impose broad obligations on the Director Defendants vis-a-vis the corporation and its individual shareholders. The Director Defendants violated these fiduciary duties by allowing conditions to persist that violated the applicable laws and regulations and otherwise exposed Dollar General to regulatory scrutiny and high fines and penalties as well as reputational and financial harm.

156.　　In addition, the Director Defendants have specific fiduciary duties as defined by the Company's corporate governance documents, including its Code of Business Conduct and Ethics and the charters of various Board committees, and principles that, had they been discharged in accordance with the Individual Defendants' obligations, would have prevented the misconduct and the consequent harm to the Company.

157.　　Each Director Defendant violated his or her fiduciary duties by consciously causing, or consciously failing to prevent the Company from engaging in, the improper acts

complained of herein.

158.     The Director Defendants consciously breached their fiduciary duties and violated
their corporate responsibilities in at least the following ways:

(i)     Failing to maintain an adequate system of oversight, operational controls, and
procedures, and other internal controls, which were necessary to prevent or
promptly correct the persistent safety hazards existing at the Company's premises;

(ii)    Affirmatively and repeatedly allowing and/or failing to correct persistent safety
violations and harm to workers in contraventions of the applicable state and federal
laws;

(iii)   Failing to ensure the Company's compliance with relevant legal and regulatory
requirements, including but not limited to requirements imposed under state and
federal occupational safety laws;

(iv)    Awarding Dollar General's officers and directors lavish compensation packages
despite their responsibility for the Company's willful misconduct; and

(v)     Reappointing certain directors who had failed in their duties to the Board and/or
Board Committees.

159.     As a direct and proximate result of the Director Defendants' breaches of their
fiduciary obligations, has sustained significant damages. Accordingly, the Director Defendants are
liable to the Company.

160.     Plaintiff, on behalf of Dollar General, has no adequate remedy at law.

## COUNT THREE

### Waste of Corporate Assets
### (Against the Individual Defendants)

161.     Plaintiff incorporates by reference and realleges each and every allegation

59

contained in the above, as though fully set forth herein.

162.　　　As detailed above, the Individual Defendants diverted corporate assets for improper and unnecessary purposes to protect their positions as officers and directors (and the financial and other benefits flowing therefrom).

163.　　　The Individual Defendants knowingly unheeded their corporate stewardship responsibilities and breached their fiduciary duties to protect the rights and interests of Dollar General, by failing to address its long-standing history of hazardous workplace conditions and high crime rates for at least six years.

164.　　　In light of Dollar General's management not achieving its stated goals, the Board should have clawed back executive compensation for both officers and directors. The Board's failure to do so has amounted to corporate waste.

165.　　　As a direct and proximate result of the Individual Defendants' conscious failure to perform their fiduciary obligations as set forth herein, they have caused the Company to waste valuable corporate assets and expend corporate funds unnecessarily by providing each Individual Defendant with excessive and unjustified compensation during the time periods when hazardous workplace conditions and high crime rates at Dollar General flourished.

166.　　　As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

167.　　　Plaintiff, on behalf of Dollar General, has no adequate remedy at law.

## COUNT FOUR

### Unjust Enrichment
### (Against Individual Defendants)

168.　　　Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60

169.     By their wrongful acts and acquiescence, Individual Defendants were unjustly enriched at the expense of and to the detriment of Dollar General. Individual Defendants were unjustly enriched as a result of the compensation, renumeration and bonuses they received while breaching fiduciary duties owed to the Company.

170.     In particular, former Chief Executive officer Todd Vasos has engaged in the alleged misconduct, and yet he received a total compensation of over $56 million between the years 2016 to 2021 inclusive.

171.     Accordingly, Vasos, like other Individual Defendants, received and will receive improper renumeration despite his widespread misconduct while at Dollar General. Defendant Vasos and other Individual Defendants will thereby be unjustly enriched by their own wrongful acts.

172.     To remedy the unjust enrichment of all Individual Defendants including Defendant Vasos, the Court should order all Individual Defendants to disgorge to the Company the amounts paid to them under the terms of his Employer Agreement, and/or his Stock Option Agreement.

173.     Plaintiff, on behalf of Dollar General, has no adequate remedy at law.

## X.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.  Against all Individual Defendants for the amount of damages sustained by the Company and as a result of the Individual Defendants' wrongdoing as described herein, including breaches of fiduciary duty, in the amount to be determined at trial, but not less than $10,000,000;

B.  Directing Dollar General to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws, and to protect Dollar General and its stockholders from a repeat of the damaging events described herein, and

61

taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

    a.  A proposal to strengthen the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

    b.  A proposal to strengthen the Company's internal reporting with respect to workplace hazards and violent crime;

    c.  A proposal to develop and implement procedures for greater stockholder input into the policies and guidelines of the Board; and

    d.  A provision to permit the stockholders of Dollar General to nominate three candidates for election to the Board to replace existing directors;

C.  Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of Individual Defendants' trading activities or their other assets so as to assure Plaintiff on behalf of Dollar General has an effective remedy;

D.  Awarding to Dollar General restitution from the Individual Defendants, and ordering disgorgement of all profits, benefits, and other compensation obtained by each of them;

E.  Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.  Granting such other and further relief as the Court deems just and proper.

## XI.    JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: February 13, 2023

s/**_Paul Kent Bramlett_** _____

Paul Kent Bramlett #7387
Robert Preston Bramlett #25895
**BRAMLETT LAW OFFICES**
40 Burton Hills Blvd., Suite 200
P. O. Box 150734
Nashville, TN 37215
Telephone: (615)-248-2828
Facsimile: (866)-816-4116
Email: pknashlaw@aol.com
       Robert@BramlettLawOffices.com


s/ *Alesandra Greco* ____

Andrea Farah
Alesandra Greco
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914)-997-0500
Facsimile: (914)-997-0035
Email: agreco@lowey.com
      afarah@lowey.com

*Attorneys for Plaintiff*

63

# VERIFICATION

I, Brent Conforti, hereby verify that I am a shareholder of Dollar General Corporation ("Dollar General" or the "Company") and am ready, willing, and able to pursue this shareholder derivative action on behalf of Dollar General. I am a shareholder of Dollar General common stock and have held shares in the Company at all times relevant in the Amended Verified Stockholder Derivative Complaint. I have reviewed the allegations in the Amended Verified Stockholder Derivative Complaint, and as to those allegations of which I have personal knowledge, I know those allegations to be true, accurate, and complete. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation, and for that reason I believe them to be true. Have received a copy of the foregoing complaint, and having reviewed it with my counsel, I hereby authorize its filing.

Brent Conforti

Notary Public

OFFICIAL STAMP
**ULISES MONARREZ**
NOTARY PUBLIC-OREGON
COMMISSION NO. 988677
MY COMMISSION EXPIRES JUNE 18, 2023